## FULLER v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. FULLER.
### Nos. 3035, 3036.

Circuit Court of Appeals, First Circuit.
Jan. 7, 1936.

John W. Townsend, of Washington, D. C. (Joseph Wiggin, of Boston, Mass., on the brief), for Alvan T. Fuller.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before MORTON, Circuit Judge, and MORRIS and McLELLAN, District Judges.

McLELLAN, District Judge.

These are petitions for the review of the decision of the United States Board of Tax Appeals. The petitions relate to the taxpayer's tax liability for the year 1930.

In his return the taxpayer reported a large tax and paid it. The Commissioner, on examination of the return, determined a deficiency of $11,190.75, and from this determination the taxpayer appealed to the Board of Tax Appeals. The Board redetermined the deficiency at $9,076.31. The taxpayer urges no deficiency exists; the Commissioner, that the Board erred in reducing the deficiency.

The controversy is as to the taxable gain involved in the acquisition and sale of shares of stock in the Packard Motor Car Company. A determination of the controversy involves primarily the Revenue Act of 1928 (chapter 852, 45 Stat. 791, §§ 22, 111, 112, and 113 [see 26 U.S.C.A. §§ 22, 111–113 and notes]), and the so-called "first-in, first-out" rule appearing in Article 58 and Article 600 (3) and (4) as amended of Regulations No. 74 under the Revenue Act of 1928. The Revenue Act provides that in computing income from sales of property purchased after February 28, 1913, any excess of the amount realized over cost shall be gain and that any excess of the cost over the amount realized shall be loss. Article 58 and Article 600 (3) and (4) as amended of Regulations No. 74 under the Revenue Act of 1928, stating the "first-in, first-out" rule, read:

"Art. 58. *Sale of stock and rights.*— When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock. The excess of the amount realized on the sale over the cost or other basis of the stock will constitute gain. In the case of stock in respect of which any stock dividend was paid, the basis for determining gain or loss from a sale of a share of such stock shall be ascertained in accordance with the principles laid down in article 600."

"Art. 600. *Stock or securities distributed in reorganization.*—* * *

"(3) Where the stock in respect of which a distribution in reorganization is made was purchased at different times and at different prices, and the identity of the lots cannot be determined, any sale of the original stock will be charged to the earliest purchases of such stock (see article 58), and any sale of the stock distributed in reorganization will be presumed to have been made from the stock distributed in respect of the earliest purchased stock.

"(4) Where the stock in respect of which a distribution in reorganization is made was purchased at different times and at different prices, and the stock or securities distributed in reorganization cannot be identified as having been distributed in respect of any particular lot of such stock, then any sale of the stock or securities distributed in reorganization will be presumed to have been made from the stock or securities distributed in respect of the earliest purchased stock."

If the so-called "first-in, first-out" rule is applicable to the facts found by the Board, the Commissioner was right in his determination of $11,190.75 deficiency. If, on the facts found by the Board, the identity of the shares of stock sold can be and was determined as reported in the taxpayer's return, no deficiency existed and the taxpayer is entitled to a judgment of, "No Deficiency."

In summarizing the facts as found by the Board of Tax Appeals, we are omitting transactions which do not enter into the controversy here involved.

The taxpayer bought stock of the Packard Motor Car Company at varying prices and on various dates from May, 1922, to August, 1928. He acquired additional shares as stock dividends in 1922,

1925, and 1926. These purchases and acquisitions were separately recorded in his books of account, as were the dividends received thereon. On September 3, 1929, the taxpayer owned 54,054 shares, of which 53,254 had been acquired more than two years before. On that date the certificates aggregating 54,054 shares of the par value of $10 each were exchanged for certificates aggregating 270,270 new no par value shares. This transaction changed not at all the extent of the taxpayer's interest in the assets and business of the corporation. To quote from the Board's findings:

"In April 1930 petitioner (the taxpayer) also sold 25,000 additional shares of the no par value stock for $548,450, and delivered the following numbered certificates, acquired at the time of the split-up in September 1929: Nos. 54272 to 54321, inclusive; Nos. 54472 to 54571, inclusive; and Nos. 54861 to 54960, inclusive.

"Petitioner maintained account books which showed, with reference to such Packard Motor Car Company common stock, the date of purchase of each lot of stock bought, the cost, the date and amount of each stock dividend, the date of each sale, the number of shares sold, the sale price, and the computation of the profit on each sale.

"Petitioner before the sale of the 40,-000 * shares in 1930 instructed his assistant, who handled his personal financial matters, to sell those shares which had cost the most and on which the taxable gain would be the least. His intention was to sell those lots which had been acquired by the most recent purchases, as they were acquired at the highest prices.

"Petitioner's assistant carried out the instructions so received in the following manner: He examined petitioner's personal ledger and journals and ascertained therefrom those lots which he claimed were acquired at the highest prices and instructed the bookkeeper to sell the same. A broker was authorized to make sales in small lots and the entire 40,000 shares were sold between April 7 and April 23, 1930. Immediately upon receipt of the broker's sales slips entries were made on the books."

The April, 1930, journal entry appearing in the Board's findings of fact need not be here repeated. The entry is in accord with the taxpayer's contention as to the shares of stock sold if they are identifiable by such a course as the taxpayer adopted. The profit reported in his tax return agrees with the entries made in his books.

The Commissioner of Internal Revenue determined that the 25,000 shares thus sold could not be identified and that the provisions of the "first-in, first-out" rule applied. The Board of Tax Appeals, differing from the Commissioner, adopted the view that the basis for determining the taxable gain derived from the sale of a portion of the stock received in a nontaxable exchange should be determined by apportioning the aggregate costs of all the shares owned by the taxpayer at the time of the exchange to the stock received by him in exchange. It should be said that when the Board of Tax Appeals rendered its decision, Helvering, Commissioner, v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343, indicating that certificates do not constitute the only possible means of identifying stock and holding that shares of stock held on margin and sold may be identified by "designation" at the time of sale of what lots should be sold and what held, had not been decided. See, also, Miller v. Commissioner, 80 F.(2d) 219, decided December 9, 1935, by the Circuit Court of Appeals for the Second Circuit. As to the view of the Board of Tax Appeals since the announcement of the Rankin decision, see Wieland v. Commissioner, Docket No. 73098 (decided October 10, 1935).

When the taxpayer received certificates of stock in the 1929 "split-up," so called, his stockholder's interest in the corporation was not changed; it remained precisely what it had been. And the 25,000 shares sold were identified by his directions and by what was done pursuant to them with the specific lots of stock originally purchased in 1925, 1927, and 1928. The cost of such lots constituted the basis for determining the profit on the sale. This taxable gain was included in the taxpayer's return and the tax paid. In our opinion the Commissioner's determination of a deficiency based on the "first-in, first-out" rule was, under the cir-

---

*These 40,000 shares included the 25,-000 shares material to the controversy and 15,000 other shares.

cumstances, unwarranted. So, too, as to the redetermination of a deficiency by the Board of Tax Appeals.

The decision of the Board of Tax Appeals is reversed, and the case remanded to that Board, with instructions to reconsider the question before it in accordance with this opinion.