## MILLIKAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 19.

Circuit Court of Appeals, Second Circuit.

April 6, 1936.

J. Marvin Haynes, of Washington, D. C. (Robert H. Montgomery, of New York City, Thos. G. Haight, of Jersey City, N. J., and W. C. Magathan, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Petitioner sold, on March 21, 24, and 28, 1930, through his brokers, 600 shares of the common stock of the American Gas & Electric Company for $88,026, and was taxed the full selling price as a profit for the reason, as the Commissioner stated

that he was unable to substantiate the cost of the securities held by him for over two years.

The brokers' records show that immediately prior to this sale petitioner had on deposit with them as collateral 1,725 shares of the common stock of the company and had purchased from time to time 993 shares on margin. He was an officer of the American Gas & Electric Company for twenty years. For services rendered he had received, from time to time, common stock of the company, and had also increased his holdings by stock dividends. These bonus and dividend stocks were put up as collateral for the stock purchased on margin. The collateral stock was deposited with the petitioner's brokers with the understanding that it was not to be sold except as petitioner might direct or as might be necessary for the protection of the account. If instructions to sell were given, the practice in the brokerage business, as testified, was that the customer intended selling his margin stock. This is so because, under the agreement with the customer, the broker cannot sell collateral stock unless directed specifically so to do. When petitioner ordered the sale of 600 shares, the brokers assumed he instructed them to sell 600 shares from the shares held on margin. The brokers did not select certain numbered certificates because of the practice prevailing of commingling all the customer's securities they hold. The brokers need have only sufficient securities on hand to meet the firm's requirements, as a bank does to meet deposits that are made subject to withdrawals.

Petitioner had purchased January 4, 1929, 1,200 shares of the stock for $155,800, and on October 21, 1929, 500 shares for $87,625, both on margin. During 1929 he sold 800 shares from the 1,200 shares purchased and reported his taxable profit.

When he instructed his brokers to sell the 600 shares in question, he asserts he intended to sell and expected his brokers to deliver the stock which he purchased on margin; that is, the 500 shares of his October 21st purchases and the remaining 100 shares from that bought January 4th. In his income tax return for 1930, he computed his tax on this basis and deducted a loss sustained from the sale of these shares. There is no evidence except the return, to identify which of his margin shares the petitioner intended to sell.

The petitioner, in giving directions to sell his stock, was justified in expecting the practice of selling margin stocks and not collateral, as stated above, to be followed. It was impossible for the brokers even to deliver the identical certificates deposited as collateral because the original certificates had been from time to time surrendered by the brokers to secure new certificates when substantial stock dividends had been declared. One of the brokers testified that they intended to sell margin stock only and received no instructions to sell collateral stock.

The deficiency taxed arises from the Commissioner's disallowance of any cost basis in computing gain on the 600 shares and in such disallowance failing to recognize the petitioner's designation of particular shares held on margin. The Board of Tax Appeals took the same view.

 The Commissioner based the deficiency on the theory that the broker delivered certificates representing certain shares of stock deposited as collateral and that this identified the shares sold. But this is not conclusive, for there is undisputed evidence showing that other shares were sold. It was held in Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 735, 79 L.Ed. 1343, that, when no certificate is issued to the customer or earmarked or otherwise allocated to him and all certificates for stock are in the name of the broker and are commingled and held by the broker for a common benefit of all dealing in that particular stock, there is no conclusive identification of the shares. The court pointed out that it was a fallacy to assume that the shares of stock can be identified only through stock certificates, saying: "It is true that certificates provide the ordinary means of identification, but it is not true that they are the only means possible. * * * Particularly is this so when, as here, the thing to be established is the allocation of lots sold to lots purchased at different dates and different prices."

It was found by the Board, and it was undisputed, that the collateral stock was accepted by the brokers "with the definite understanding that said securities are deposited as collateral and not for sale under any circumstances, except as a customer might direct or might be necessary for the protection of the account." It is conceded that there was no instruction to the brokers to sell any of the collateral stock. Neither were there any sales necessary to

protect the account because on that day the margin was ample. It is thus plain that the brokers had no option as to which class of stock was to be sold on petitioner's order. Within Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343, and Miller v. Commissioner, 80 F.(2d) 219 (C.C.A.2), the petitioner has sufficiently established that the sales here were from the stocks held on margin. However, there is no evidence except the return to identify which of his margin shares the petitioner intended to sell. In such case, article 58, Regulation 74, Act of 1928, provides for the application of the first in, first out, rule.

As the petitioner made his return, the stock he asserts he intended to sell cost $100,318.33. The brokerage account shown in this record discloses that prior to the sale there were on hand in the margin account 993 shares, made up of 500 shares purchased October 21, 1929, 400 shares of the 1,200-share lot purchased on margin January 4, 1929, and 93 shares from a purchase prior to 1929. The cost of this margin stock is as follows: September 3, 1925, 200 shares at $74.675 per share; January 4, 1929, 1,200 shares at $129.833 per share; October 21, 1929, 500 shares at $175.25 per share. Applying the rule of first in, first out, the cost of 600 shares sold would be computed as follows:

| | |
|---|---|
| 93 shares thus purchased | $ 6,944.77 |
| 107 shares purchased October 21, 1929 | $18,751.75 |
| 400 shares purchased January 4, 1929 | $51,933.32 |
| A total for the 600 shares of | $77,629.84 |
| which he sold for | $88,026.00 |
| making a profit of | $10,396.16 |
| which is to be taxed. | |

We think the stock sold is sufficiently identified as margin stock, and that the sales from this should be allocated according to the first in, first out, rule.

Order reversed.