### VAWTER v. COMMISSIONER OF INTERNAL REVENUE.*

No. 1300.

Circuit Court of Appeals, Tenth Circuit.

April 9, 1936.

*Rehearing denied May 27, 1936.

Walter A. Bolinger, of Washington, D. C., for petitioner. ·

Harry Marselli, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

This petition presents for decision a deficiency assessment of income tax laid against petitioner for the year 1930. Petitioner was an employee of Burroughs Adding Machine Company. He began purchasing capital stock of the company in 1917, and at the beginning of the year 1929 he owned 500 shares which were acquired at different times and prices for investment. In May, 1929, he attended a convention of agents of the company held at Detroit and learned while there that a stock dividend of four shares for one was contemplated. Induced by that information, he purchased 100 shares of stock for speculation at a cost of $30,540; and he intended to keep that stock separate from his earlier investments and to make a quick sale of it at a profit. He borrowed $29,-724.10 from a bank with which to make the purchase and pledged 200 shares of his old stock as collateral for the loan. On June 13th he received certificate No. A–5720 for 100 shares, which represented his new purchase. He placed the certificate in a separate envelope, where it remained pending receipt of the expected stock dividend. On August 1st, thereafter, he received 24 certificates for 100 shares each, numbered consecutively A–14637 to A–14660, inclusive, which represented the dividends. These shares were alike except in number, and they could not be identified in any way as having originated from any particular certificates previously owned by petitioner. Immediately upon receipt of the dividend certificates, petitioner removed certificate No. A–5720 from the envelope in which he had kept it apart from other stocks and placed therein five of the dividend certificates numbered A–14638 to A–14642, inclusive. They were selected at random from the en-

tire lot, except with reference to their consecutive numbers. Prior to making that change petitioner had written on the outside of the envelope, "Bot Clark Childs & Co. Detroit at all star convention for speculation 100 shares of Burroughs May 1929." and immediately after making the substitution he wrote on the envelope just below the former indorsement:

Contents: 500 shares Burroughs stock dividend for quick profit out of above purchase

| | Nos. | 14638 | |
|---|---|---|---|
| | | 14639 | cost |
| Aug. 31, 1929 | | 14640 | $30,540.00 |
| | | 14641 | |
| | | 14642 | |

During the year 1930 petitioner sold 500 shares of his stock for $25,642.50, and delivered to the purchaser the five dividend certificates which had remained in the envelope ever since the described substitution was made. At the time of making the sale he added a further indorsement on the envelope just below the place at which he had indicated the cost of the stock to be $30,-540, as follows:

Sold
May 1930—25,642.50
_____
Loss 4,897.50

In his return for the year 1930 petitioner claimed a deduction for a loss of $4,897.50, representing the difference between the cost of the 100 shares purchased in 1929 and the sale price of the 500 shares sold in 1930. The Commissioner disallowed the deduction, applied the "first in, first out" rule, computed the profit on the basis of the cost of the old stock, and imposed a deficiency·assessment of $2,875.58. The Board of Tax Appeals sustained that action, and the proceeding is here on review.

The question presented is whether the so-called "first in, first out" rule applies; it being stipulated that, if it has application, the computation was correct and the tax is due. Sections 111 and 113 of the Revenue Act of 1928 (45 Stat. 791, 26 U.S.C.A. § 111 and note, and § 113 note) provide that in computing income from sales of property purchased after February 28, 1913, excess of the amount realized above cost shall be gain and excess of cost over the amount realized shall be loss. Articles 58, 600, and 628, Treas-

ury Regulations No. 74, promulgated under the act, provide:

"Art. 58. Sale of stock and rights. When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots cannot be determined, the stock shall be charged against the earliest purchases of such stock. The excess of the amount realized on the sale over the cost or other basis of the stock will constitute gain. In the case of stock in respect of which any stock dividend was paid, the basis for determining gain or loss from a sale of a share of such stock shall be ascertained in accordance with the principles laid down in article 600.

"Art. 600. Stock or securities distributed in reorganization. * * *

"(4) Where the stock in respect of which a distribution in reorganization is made was purchased at different times and at different prices, and the stock distributed in reorganization cannot be identified as having been distributed in respect of any particular lot of such stock, then any sale of the stock distributed in reorganization will be presumed to have been made from the stock distributed in respect of the earliest purchased stock.

"Art. 628. Stock dividends. The issuance of its own stock by a corporation as a dividend to its shareholders does not result in taxable income to such shareholders, but gain may be derived or loss sustained by the shareholders from the sale of such stock. The amount of gain derived or loss sustained from the sale of such stock, or from the sale of the stock in respect of which it is issued, shall be determined as provided in articles 561 and 600."

Construed together, the regulations create a presumption that shares of stock sold from an unidentifiable lot were the first acquired; and that such presumption applies to shares acquired as a dividend. The rule is an arbitrary one, and it may effect hardships, but its validity has been recognized and is not open to question. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L. Ed. 1343; Snyder v. Commissioner, 295 U. S. 134, 55 S.Ct. 737, 79 L.Ed. 1351; Howbert v. Penrose (C.C.A.) 38 F.(2d) 577, 68 A.L.R. 820.

 The burden rested upon petitioner to show that the stock sold in 1930 was that purchased in 1929. Skinner v. Eaton (C. C.A.) 45 F.(2d) 568, certiorari denied 283 U.S. 837, 51 S.Ct. 486, 75 L.Ed. 1449. It is argued that stock certificates are not the only means by which shares of stock may be identified; that the admitted intention of petitioner to sell the shares acquired during the preceding year and the memoranda on the envelope were sufficient to discharge the burden. It is settled law that shares of stock can be identified otherwise than through stock certificates, but intention alone is not enough to do so. There must be a further designation in order to establish the requisite identity. Helvering v. Rankin, supra; Snyder v. Commissioner, supra; Miller v. Commissioner (C.C. A.) 80 F.(2d) 219; Fuller v. Commissioner (C.C.A.) 81 F.(2d) 176; Skinner v. Eaton, supra. The writing on the envelope does tend to corroborate the intention, and it may be conceded that the two combined and considered apart from other facts indicate a sale of the interest in the corporation which was purchased during the previous year; but arrayed in bold contradiction is the fact that, upon receipt of the certificates representing dividends, petitioner removed certificate No. A–5720 from the envelope and placed five of the dividend certificates in it; and, in consummating the sale, he delivered the five certificates to the purchaser and retained the certificate which represented the purchase. His only explanation is that maintenance of sequence in numbers prompted him to make that substitution and delivery. Sequence in numbers could have been preserved without doing that. The obviously natural way in which to effect the now asserted intention of the taxpayer, and at the same time maintain sequence in numbers, was to allow certificate A–5720 to remain in the envelope, place the first four or the last four of the dividend certificates with it, and then deliver these five certificates to the purchaser; but, significantly, that was not done. It is well settled that, where a taxpayer has stock in his possession and deliberately delivers certain shares in consummation of a sale, he cannot afterwards say in computing income tax liability that he intended to sell other shares. His deliberate act controls—not what he intended to do. Horner v. Commissioner (C.C.A.) 72 F. (2d) 407; Commissioner v. Merchants' & Manufacturers' Fire Ins. Co. (C.C.A.) 72 F.(2d) 408; Horner v. Commissioner (C. C.A.) 78 F.(2d) 813. That is the factual situation here. We do not deal with a case in which the taxpayer directed a

14

broker or other agent or custodian to sell and make delivery of identified shares, and through neglect or mistake different shares were delivered in violation of his intention and direction.

We are told in the alternative that petitioner attempted to allocate the dividend certificates and that the effect of the sale was to make disposition of four-fifths of the stock interest purchased in 1929. The dividend shares were not allocated by language, record, number, or otherwise to any particular shares. They were issued on the basis of the entire amount of stock held. Petitioner could not make an arbitrary allocation of them. The regulations prevented that; they intervened and applied the presumption that the shares sold were chargeable against the earliest purchases of stock. Reliance is placed upon O.D. 735, 3 Cumulative Bulletin, p. 40, to sustain the contention. It does not govern, because the regulations under the Revenue Act of 1928, to which reference has been made, were promulgated later, and under familiar rules of construction they superseded the earlier regulation in respect of any conflict between them.

The order of the Board of Tax Appeals is affirmed.