**CURTIS v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10744.

Circuit Court of Appeals, Eighth Circuit.

April 5, 1937.

Charles E. Abbott, of Fremont, Neb., for petitioner.

Maurice J. Mahoney, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Harry Marselli, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

STONE, Circuit Judge.

This is a petition to review a redetermination of an additional income tax assessment against petitioner for the year 1926. When this matter came before the Board of Tax Appeals, there were two items in dispute, one of which the Board decided in favor of petitioner and one in favor of the Commissioner. After the decision by the Board, the parties arrived at a settlement under rule 50 of the Board, which settlement disposed of one of the matters of issue before the Board, and arrived at the amount of tax due upon the other—leaving the liability for the tax as to the latter in dispute. It is this tax liability which is here on the petition to review.

The sole issue presented here arises and is as follows: Prior to 1926, petitioner had acquired and then held a substantial amount of the capital stock of Lyman-Richey Sand & Gravel Company. In January of that year, H. E. Schellberg was vice president and general manager of the company and he and his wife were owners of 1,503 shares of stock therein. In that month disagreements arose which resulted in the retirement of Schellberg as general manager. The situation developed by this disagreement was such that petitioner deemed it advisable to remove the Schellberg influence by acquiring the capital stock held by him and his wife. In connection therewith, petitioner deemed it wise for practical business reasons, to have several of the important employees of the company become stockholders. This situation was explained to these employees and petitioner suggested he would like to have them take about one-third of the stock. The result of negotiations between petitioner and them was that each of them agreed to take some of the stock. In no instance was the exact amount of stock which any employee would thus acquire definitely determined, the nearest approach thereto being that one employee agreed to invest between five and six thousand dollars therein. The rather indefinite understanding seems to have been that they together would take one-third of the stock. Also, it was understood that while petitioner was paying something over $93 per share he would let them have it for $85 per share. Thereafter, petitioner bought from Schellberg and his wife the above 1,503 shares of stock for slightly over $93 per share. The certificates representing

such stock were delivered to petitioner who had them replaced by certificates issued in his name. These latter certificates were deposited as collateral with Schellberg to secure payment of the balance of the purchase price. Thereafter, and at various times within three months, petitioner delivered to the several employees the amount of their subsequent purchases in a total of 501 shares for $85 a share. These 501 shares were issued to the employees from shares represented by certificates held by petitioner before 1926. During the period when these latter shares were issued to the employees, the certificates covering the stock purchased from Schellberg were held by him as collateral security for the purchase price.

There is no dispute as to the amount received by petitioner for the 501 shares. The issue here is as to the cost base properly usable in determining the gain or loss from such transactions. The Commissioner used as a base the cost to petitioner of the shares represented by the certificates from which the 501 shares were actually taken. Petitioner contends that the base should have been the share cost of the shares purchased from Schellberg and his wife.

The argument of petitioner is that he never, at any time, desired or offered for sale any of the stock owned by him before 1926; that the plan of having the employees acquire stock arose and applied only and was understood by them to apply only to the stock to be acquired from Schellberg and his wife; that, in effect, he and the employees were participants in the purchase of the Schellberg stock; and that it was his and their intention to deal only with such stock.

Petitioner recognizes the rule that this court corrects only errors of law on the part of the Board and that where there is substantial evidence to sustain a finding of fact made by the Board such finding is conclusive upon this court. He seeks to avoid this situation by contending that there is no substantial evidence in the record to sustain the decision of the Board that the 501 shares of stock were transferred from the stock held by him before 1926, but that the undisputed evidence is that such shares were transferred and intended to be transferred from the Schellberg stock.

All of the evidence introduced before the Board consisted of that of petitioner

and of the three purchasing employees. This evidence makes clear that petitioner had never offered to sell to these employees or others any of the stock held by him before 1926, and that the entire matter of purchase of stock by the employees arose because of the Schellberg situation. It falls short of showing that either petitioner or any of the employees had in mind that the stock sold and bought must or should be that represented by the exact certificates held by Schellberg and his wife. No one of the employees so testifies. Petitioner's own actions are proof that the identity of the shares was not material to him since, with complete control of the matter, he deposited these precise shares as collateral and later made the transfer to the employees from other shares.

Nor is there any evidence which would justify, much less compel, the conclusion that petitioner was acting merely as the agent or representative of the employees in purchasing any of the stock from the Schellbergs. The arrangement as made and carried out was for petitioner to buy the 1,503 shares from the Schellbergs at about $93 a share and to sell the individual employees about one-third that amount in such individual amounts as might afterwards be determined at $85 a share.

■ It may readily be conceded that certificates for stock are not the exclusive method of identifying stock dealt with, but "it is true that certificates provide the ordinary means of identification." Helvering v. Rankin, 295 U.S. 123, 128, 55 S. Ct. 732, 734, 735, 79 L.Ed. 1343. It is true that the seller of stock, who holds certificates of stock purchased at different and various prices, may designate the particular stock to be transferred. Helvering v. Rankin, supra, 295 U.S. 123, at pages 128-131, 133, 55 S.Ct. 732, 734-736, 79 L.Ed. 1343; Snyder v. Commissioner, 295 U.S. 134, 137, 55 S.Ct. 737, 738, 79 L. Ed. 1351. It may even be that where a selling agent violates instructions as to such stock deliveries, that the instructions to him might control, though as to this we venture no opinion. However, there was no mistake in this transaction. Everything was done under and in accordance with the desires of the petitioner.

■ The evidence here is in conflict even as to the intention of petitioner. His acts in depositing the certificates representing the Schellberg stock as collateral and in making the transfer to the employees from the earlier held certificates are directly opposed to his testimony of an intention upon his part that the transfer should be from the Schellberg stock. This conflict would compel us to hold that there was substantial evidence that no such intention existed. However, were such intention clearly established without dispute, such would not be sufficient of itself and alone to nullify the effect of what was actually done. Helvering v. Rankin, supra, 295 U.S. 123, 128, 129, 55 S.Ct. 732, 734, 735, 79 L.Ed. 1343; Snyder v. Commissioner, supra, 295 U.S. 134, 137, 55 S.Ct. 737, 738, 79 L.Ed. 1351. Petitioner had a choice of so handling this matter that the transfer would have been from the Schellberg stock or from other stock held by him. In this situation we must consider and follow what he did and not what he might have done. United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 98, 56 S.Ct. 353, 358, 80 L.Ed. 500; Bonham v. Commissioner, 89 F.(2d) 725 (C.C.A. 8).

■ Petitioner contends that a certificate of stock is not the property itself, but merely evidence thereof and that the substitution of stock coming from his old certificates in the place of that coming from the Schellberg certificates did not affect the identity of the stock and was merely for convenience. Generally speaking, it is true that it makes no substantial difference to one buying or selling stock as to what particular certificate is the source of delivery. However, in tax matters where the problem is the gain or loss from sales of stock it is obvious that the particular origin of the stock sold is of vital importance in determining the gain or loss from the sale. Here the petitioner had sufficient stock to make delivery several times over. Some of this stock had been acquired at one price and other of the stock at other prices. Some was the Schellberg stock and some was not. It was here essential to determine the exact stock transferred in order to arrive at a cost base for determining the loss or gain. Certificates of stock are "the ordinary means of identification" (Helvering v. Rankin, supra, 295 U.S. 123, at page 128, 55 S.Ct. 732, 734, 735, 79 L.Ed. 1343) in such transactions and the burden of showing the contrary is upon the petitioner (Helvering v. Rankin, supra, 295 U.S. 123, at page 129, 55 S.Ct. 732, 735, 79 L.Ed. 1343). We must conclude that this burden

has not been sustained here to the point where this court can say that the determination of the Board to the contrary is unsupported by substantial evidence.

The determination of the Board must be and is affirmed.