### DAVIDSON v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 10883.

Circuit Court of Appeals, Eighth Circuit.

Jan. 27, 1938.

E. J. Svoboda, of Omaha, Neb. (J. A. C. Kennedy, Yale C. Holland, G. L. DeLacy, and R. E. Svoboda, all of Omaha, Neb., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to the. Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This case comes upon petition to review an order of redetermination of the Board of Tax Appeals whereby it was decided that there is a deficiency in income tax due from the petitioner for 1929 in the sum of $5,129.50. The facts concerning the sale of stocks from which the questions here presented arise are thus found by the Board of Tax Appeals:

"On June 19, 1929, the petitioner instructed the broker to sell 500 of the 1,000 shares purchased on March 27, 1929, certificates for which were on deposit at the Omaha National Bank. When the sale was made the petitioner called at the bank to get the certificates for delivery to the broker, but the bank refused to release them to the petitioner, stating that they would make delivery themselves. The petitioner then instructed the bank to deliver 500 shares from the certificates numbered 80,250 to 80,258, inclusive, and 80,264. In making delivery of the certificates, however, a bank clerk, by mistake, delivered certificates from another lot which had been held as collateral by the bank since 1925. The mistake was not known by the petitioner at that time.

"On July 1, 1929, the petitioner instructed the broker to sell the remaining 500 shares purchased on March 27, 1929. When this sale was made he instructed the bank to deliver to the broker certificates for 500 shares from the remainder of the certif-

icates numbered 80,250 to 80,258, inclusive, and 80,264. Again, however, the bank made the same mistake and delivered to the broker certificates for 500 shares from the same lot which it had held as collateral since 1925. The selling price of the first 500-share lot sold by the broker on June 19, 1929, was $28,042.50 and of the second 500-share lot sold July 1, 1929, was $31,392.50. The cost of the 1,000 shares purchased by the petitioner on March 27, 1929, represented by certificates 80,250 to 80,258, inclusive, and 80,264, was $49,900. The cost of the 1,000 shares delivered to the broker by mistake was $4.42 per share or $4,420 for the 1,000 shares."

The facts thus found are undisputed, and from them it appears that the income profit on the shares sold over their cost is $55,015, and that such profit on the shares intended to be sold over their cost would have been $9,335. It is the contention of petitioner that the latter basis of computation should be employed, in which case there would be no deficiency in tax liability under returns made. The Board of Tax Appeals held that the shares delivered to the broker were the shares actually sold by the petitioner. The question presented for our answer is thus succinctly stated by government counsel: "Whether the taxable gain from the sale of 1,000 shares of certain stock in 1929 is to be determined, as the Board held, upon the basis of the cost of the shares which the taxpayer actually sold, as represented by the certificates actually delivered in consummating the sale, which certificates have been identified, rather than, as the taxpayer claims, upon the basis of the cost of the shares which he intended to sell and instructed the broker to sell."

It is the contention of the petitioner that the decisions of the Supreme Court and of the various Circuit Courts of Appeals have established as a matter of law that the taxpayer in all cases sufficiently identifies the shares to be sold when he designates such shares as being those purchased on a particular date. It is obvious, upon reading the decisions which the diligence of able counsel have cited for our consideration, that what superficially may appear to be divergent views are in most cases susceptible of reconciliation because of crucial differences in the situations presented. There are, however, a number of matters of law upon which there is substantial agreement. Concededly the decision of the Supreme Court in Helvering v. Rankin, 295 U.S. 123, 55 S.

Ct. 732, 735, 79 L.Ed. 1343, is the pronouncement of that court which most materially affects the question here presented, and interpretations placed upon its language by the Circuit Courts of Appeals have largely been the basis of their rulings.

Treasury Regulation No. 74, article 58, provides that, "when shares of stock in a corporation are sold from lots purchased at different dates and at different prices, and the identity of the lots cannot be determined, the stock sold shall be charged against the earlier purchases of such stock." In the Rankin Case the petitioner was engaged in marginal transactions in none of which did the broker deliver to him, nor he to the broker, any stock certificate. The purchases and sales were made through the medium of street certificates handled by the broker, and the transactions were evidenced solely by debits and credits in the taxpayer's account on the broker's books. Through orders communicated to his broker he had made it plain that 1,200 shares first purchased by him were in the nature of a permanent commitment on his part, and that the sales of stock incidental to his marginal transactions were to be consummated from stock later purchased. In this state of facts the Commissioner and Board concluded that it was impossible to determine the identity of the lots purchased and sold, and that, consequently, the "first-in, first-out" regulation above quoted should be applied. The basis of the Commissioner's contention was that all the street certificates of stock held in the name of the broker were commingled and indistinguishable, and that, in such transactions, no certificate was issued in the name of the customer, or earmarked for or otherwise allocated to him. Mr. Justice Brandeis said: "The fallacy of this argument lies in the assumption that shares of stock can be identified only through stock certificates. It is true that certificates provide the ordinary means of identification. But it is not true that they are the only possible means. * * * The required identification is satisfied, if the margin trader has, through his broker, designated the securities to be sold as those purchased on a particular date and at a particular price. It is only when such a designation was not made at the time of the sale, or is not shown, that the 'First-in, first-out' rule is to be applied."

Other matters were considered in this opinion, but the points ruled of interest here are that stock certificates, while the ordinary, are not the only possible, means of identification; and that the first-in, first-out rule applies in marginal transactions only when the identification of sales and purchases is not possible by any relevant evidence. In the instant case no marginal transactions are involved, and the "first-in, first-out" rule has no application. All the courts agree that the mere intention of the trader to sell particular shares without further identification is insufficient. Snyder v. Commissioner, 295 U.S. 134, 137, 55 S.Ct. 737, 738, 79 L.Ed. 1351; Vawter v. Commissioner, 10 Cir., 83 F.2d 11; Horner v. Commissioner, 3 Cir., 72 F.2d 407; Skinner et al. v. Eaton, 2 Cir., 45 F.2d 568. In Curtis v. Commissioner, 8 Cir., 89 F.2d 736, 738, this court had under consideration a case in which there was no mistake in the transaction as consummated. Everything was done under and in accordance with the desires of the petitioner who had the choice of so handling the matter that the transfer of stock could have been made from that acquired from a specific source. This court in that case recognized the certificate as the customary means of identification of stock in the following language: "It may readily be conceded that certificates for stock are not the exclusive method of identifying stock dealt with, but 'it is true that certificates provide the ordinary means of identification' "—citing Helvering v. Rankin, supra. It ventured no opinion as to the controlling effect of instructions if violated by a selling agent, and held that in the situation presented it must consider and follow what the taxpayer did, and not what he might have done—citing United States v. Safety Car Heating Co., 297 U.S. 88, 98, 56 S.Ct. 353, 358, 80 L.Ed. 500, and Bonham v. Commissioner, 8 Cir., 89 F.2d 725.

In Vawter v. Commissioner, 83 F.2d 11, 13, the Tenth Circuit Court of Appeals makes a similar reservation with respect to neglect or mistake on the part of a broker or selling agent, where different shares are delivered in violation of the taxpayer's intention and direction; but holds, in the case before it, that "it is well settled that, where a taxpayer has stock in his possession and deliberately delivers certain shares in consummation of a sale, he cannot afterwards say in computing income tax liability that he intended to sell other shares."

In Miller v. Commissioner, 80 F.2d 219, 221, the Circuit Court of Appeals for the Second Circuit, in denying the application of the "first-in, first-out" rule, held that "a

designation by instructions to the broker of the shares to be sold is controlling though the certificate delivered does not correspond with the instructions," and that, where there is a designation such as was found sufficient in Helvering v. Rankin, supra, "it can make no difference whether the stock is held on margin or not." In that case the certificates were in the possession of the broker, who also held from the taxpayer written instructions, to sell, embodying the number of shares and dates of purchase.

With the greatest respect for the eminent judges of the Second Circuit, we find ourselves unable to concur in the broad holding that a designation by instructions to the broker is controlling in all cases, though the certificate delivered does not correspond with the instructions. In the case at bar it is conceded that selling directions were given to the broker. It does not appear from the record that the instructions were written, as they were in the Miller Case.

In our opinion the language used by Mr. Justice Brandeis in the Rankin Case, in view of the situation there presented, fairly justifies the inference that identification by certificate is the best method where possible and available. This construction is especially applicable to the facts found in the present case, which differs in some phases from others brought to our attention. The certificates were in the possession of the taxpayer as between him and the broker, and the sale was to be consummated by their delivery. Where such is the case the certificates, in the absence of special circumstances, not present here, should control as the best means of identification available. It should be noted that both the bank in which they were deposited, and the broker who made the sale, were the agents of the taxpayer. The negligence alleged must be imputed to him. No responsibility attaches to the government. The result is that the taxpayer, while failing to realize the special benefit intended, has received the profit inuring from the sale actually made, while, if his present contention be indulged, the government has lost the income normally and legally taxable upon the transaction. It is uniformly held that tax liability must be determined by what in fact is done. United States v. Phellis, 257 U.S. 156, 172, 42 S.Ct. 63, 66, 66 L.Ed. 180; United States v. Safety Car Heating Co., 297 U.S. 88, 98, 56 S.Ct. 353, 358, 80 L.Ed. 500; Remington-Rand, Inc., v. Commissioner, 2 Cir., 33 F.

2d 77, 78; Bonham v. Commissioner, 8 Cir., 89 F.2d 725, 728; Curtis v. Commissioner, 8 Cir., 89 F.2d 736, 738; Horner v. Commissioner, 3 Cir., 72 F.2d 407 and Id., 3 Cir., 78 F.2d 813. And this must be true if a dependable rule is to be established applicable to situations such as this.

While no ulterior purpose is to be attributed to the petitioner in this case, it is not difficult to perceive that the rule for which he contends may be made the means of tax evasion by collusion between taxpayer and broker. We do not mean to imply such conduct in this case. The petitioner undoubtedly acted in good faith, and the broker presumably acted upon the certificates furnished for delivery in consummation of the sales. Notwithstanding the instructions given, the broker may well have assumed that the certificates furnished evidenced the final purpose of the trader. Compare Skinner v. Eaton, 2 Cir., 45 F.2d 568, 570. The broker had no reason to suspect that the delivery of the certificates was not the deliberate act of petitioner; that being the adopted method of identifying the shares to be furnished in consummation of the sales.

Being of opinion that the conclusion reached by the Board of Tax Appeals is fully supported by the facts found, its order of redetermination is approved and affirmed.