SMITH v. HIGGINS, Collector of Internal Revenue.

No. 173.

Circuit Court of Appeals, Second Circuit.

March 6, 1939.

David Sher, of New York City (Kevin McInerney, of Rochester, N. Y., of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Robert E. Pratt, Asst. U. S. Atty., of New York City, of counsel), for defendant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff filed his income tax return for 1932 with the Collector of Internal Revenue for the Third District of New York and therein claimed a deduction for a loss sustained on the sale of securities to Innisfail Corporation on December 29, 1932. He also claimed a deduction for a loss sustained on the sale of certain securities to his wife on the same date. Both deductions were disallowed; a deficiency in income taxes for 1932, based on the disallowances, was determined; and a fraud penalty was assessed. The plaintiff paid the amount of the deficiency, penalty and interest to the defendant collector. He then duly filed a claim for refund and, upon the failure of the Commissioner to act upon the claim within six months, brought this suit to recover the amount so paid.

The trial was by jury in the District Court for the Southern District of New York. Both sides moved for a directed verdict. Both motions were denied. A verdict was returned for the defendant on the cause of action based on that part of the deficiency resulting from the disallowance of the claimed loss on the sale of securities to Innisfail and on the other two causes of action the plaintiff recovered. Both parties have appealed but the appeal of the defendant does not include the fraud penalty recovered and relates only to the cost basis to be given the securities sold by the plaintiff to his wife.

In 1926 Innisfail Corporation was organized by the plaintiff who acquired all of its stock except qualifying shares of directors and even as to those he had the power to acquire them at any time. Innisfail was clearly a one-man corporation wholly owned by the plaintiff all of the time from its incorporation through the entire taxable period here involved. It purchased, held and sold securities as he caused it to and at the time he sold to it the shares with which we are presently concerned it owned securities then having a value of $791,751.92 of which all but about $30,000 had been acquired from the plaintiff and it also had cash to the amount of $17,115.03.

The sale in question was of securities which cost the plaintiff $234,002.31 and for which he received from Innisfail the then market price of $60,923.80 in the following manner: He was indebted to Innisfail to the amount of $68,364.68 just before the sale and paid that debt with the securities and his check for the remainder. The shares were transferred to the purchaser on the books of the issuing corporations and have all been retained by Innisfail except those of one corporation which was liquidated in 1935. On December 22, 1934, the plaintiff sold all of his shares in Innisfail to his children. Thus it was proved that the securities here involved were actually sold to Innisfail and the legal title to them has ever since been in the purchaser except only those of the corporation which was liquidated. Not even those shares were reacquired by the plaintiff.

However closely the plaintiff controlled Innisfail as its sole stockholder, and he was also its president, it is clear that that corporation had for years before this transaction bought, sold and held, and did afterwards buy, sell and hold, large amounts of

securities. It had a business existence and was a corporate entity separate and distinct by itself with assets and liabilities of its own apart from those of its sole stockholder. And the fact that it had but one stockholder did not prevent its having such a separate legal status. Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. As such a corporation, it was in law a legal person whose acts were its own in making the purchase of these securities and when the purchase was made and the shares transferred to it Innisfail was the sole owner of them. The plaintiff had no legal interest thereafter in the property sold. Compare, Klein v. Board of Supervisors, 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Nixon v. Lucas, 2 Cir., 42 F.2d 833. Where a corporation having but one stockholder does have separate dealings at a loss the sole stockholder may not take a deduction for its loss on his own income return. Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Menihan v. Commissioner, 2 Cir., 79 F.2d 304. Nor is his holding period to be added to that of such a corporation for the purpose of determining whether a capital asset was sold. Webber v. Knox, 8 Cir., 97 F.2d 921.

Perhaps a case as closely in point as any is Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, where a loss deduction was allowed on a real sale by a sole stockholder to his corporation. See, also, Commissioner v. Eldridge, 9 Cir., 79 F.2d 629, 102 A.L.R. 500, and Commissioner v. McCreery, 9 Cir., 83 F.2d 817. We had a parallel situation in Foster v. Commissioner, 2 Cir., 96 F.2d 130, in respect to the securities purchased by the closely controlled corporation and retained by it. As the evidence was undisputed and proved an actual sale of these securities which permanently divested the plaintiff of title to them, his motion for a directed verdict on this cause of action should have been granted. The existence of a motive to reduce or avoid taxation by making a valid sale is of no consequence for the plaintiff had the right to give effect to that purpose by whatever lawful means he had available. Gregory v. Helvering, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. Though the case just mentioned is relied on by the government it is not of help to it for it had to do with a pretended reorganization not within the scope of that statute. The present case differs in that it involves a real sale to an actual buyer.

The second cause of action is reviewed on the appeal of the collector only on the one point of the cost basis of the shares. The plaintiff purchased 2,000 shares of General Motors Corporation stock in October, 1929. In August, 1931, these shares were merged in a certificate for 10,000 shares which became a part of the plaintiff's holdings. In 1929 the plaintiff had received in a stock split-up 2,000 shares of General Motors stock which were represented by certificates D54441—60. Plaintiff's accountant in June, 1932, erroneously allocated these certificates on the plaintiff's books to the October, 1929, purchase. When in December, 1932, the plaintiff sold his wife 2,000 shares of General Motors stock he intended to deliver to her the shares he had purchased in October, 1929. He asked his accountant which certificates represented those shares and was told that the ones numbered as above did. At the time they were held as collateral by a bank and he had them released and delivered them to his wife to complete his sale of shares to her. Plaintiff argues that as he clearly intended to sell the shares he purchased in 1929, those he delivered should be treated as the shares he desired to sell and relies on Helvering v. Rankin, 295 U. S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Kraus v. Commissioner, 2 Cir., 88 F.2d 616; and Fuller v. Commissioner, 1 Cir., 81 F.2d 176. It is to be noted, however, that here the issue is not whether the plaintiff sufficiently described the shares he intended to sell so that they could be identified. It is plain that his final description was by certificate numbers and that he delivered the actual certificates he intended to deliver though they did not represent the shares he thought they did. In this situation the controlling decision is Davidson v. Commissioner, 305 U.S. 44, 59 S.Ct. 43, 83 L. Ed. ——, Dec. Nov. 7, 1938. See, also, Curtis v. Commissioner, 8 Cir., 89 F.2d 736; Vawter v. Commissioner, 10 Cir., 83 F.2d 11. As there was no issue of fact for the jury, the defendant's motion for a directed verdict should have been granted.

Judgment reversed and cause remanded for a new trial.