## CRESPI v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10071.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1942.

Robert Ash, of Washington, D. C., and Nathan Patten, of Waco, Tex., for petitioner.

Bernard Chertcoff, Sewall Key, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal

Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

· HUTCHESON, Circuit Judge.

What is in question here is whether the taxpayer by the measures he caused to be taken in the issuance of certificates in a successor corporation, has succeeded in preserving the identity of particular shares of a predecessor corporation,[1] and therefore the same base for determining gain or loss resulting to him from the sale of seventy-five of the successor corporation's shares.

Before the board the commissioner, relying upon the general rule that the result of a corporate reorganization or succession and the issuance of new shares, is to destroy the identifiableness of particular shares in the old corporation and therefore their particular cost bases, and to create a new base for the new shares, the average cost of them all, insisted that nothing in the facts of this case took it out of the rule.

The taxpayer, recognizing the general rule to be as stated by the commissioner, insisted; that the basis of it was not the change of one corporate charter for another but the loss of the identity of particular shares of stock; and that the measures he had caused to be taken here in the issuance of the new shares as equivalents of the old, had preserved the identity of the old shares, and thus had taken this case completely out of the rule.

The board, held that the sale of the shares in the successor corporation as, and for the precise amount per share which had been paid for, the Helmbrecht shares in the predecessor corporation, had, because the shares had lost their identity and their cost must be the average cost of the stock, resulted in a large gain. It found for the respondent and affirmed his determination of a deficiency of $9,670.56. The taxpayer is here insisting that this decision exalts a rule above the reason for the rule, prefers the form of things to their substance. We cannot agree. We think the shoe is rather on the other foot and that the elaborate measures the taxpayer resorted to, to preserve in the new corporation the identity of the Helmbrecht shares, were wholly ineffective to do so. These are the facts. Incorporated in 1908 as Crespi Roensch & Company, its name changed in 1910 to Crespi & Company, its corporate life extended by amendment to July 20, 1933, and its capital stock increased to 1,000 shares of $1,000 par value, taxpayer, by purchases made from time to time, including the final purchase from Helmbrecht, had, by July, 1926, become its sole stockholder.

Overlooking, until shortly prior to November 23, 1934, that the charter of the company had expired, the officers of the company continued to conduct its business as before. Undertaking then to revive the charter but finding that under Texas law this could not be done, the stockholders of the company met and, resolving, that they desired "to continue the business and affairs of Crespi & Company, without interruption or change of any kind or character in the same manner as it has been heretofore, and as it is now being conducted,"[2] made provision for the formation of a

[1] Whose shares he had bought in separate and identified lots from time to time and at different prices, until in 1926 he had become the sole stockholder. These shares included Certificate No. 20 for 149 shares, and Certificate No. 21 for one share, which he had bought from one Helmbrecht in July, 1926, at $1,468.95 per share.

[2] "Whereas, said Stockholders desire to continue the business in such manner that all of the properties, merchandise, moneys, funds, credits, stocks, bonds, debentures, securities, and all other assets of every kind, character or description, may be held intact and preserved in statu quo, without distribution of any kind or character, either actual or constructive, express or implied, to the end that the same may be acquired by and transferred to a Corporation, to be organized and incorporated under and by virtue of the Laws of the State of Texas by the present Stockholders, such Corporation to be known and designated Crespi & Company, being the same Corporate name as heretofore used, and which Corporation, upon the granting of its Charter, to acquire all of the assets of Crespi Company by proper transfer and delivery from said Trustees and to assume, pay off and discharge all outstanding debts or obligations of said Corporation, according to their face, tenor and effect of their respective maturity dates, therefore, be it

"Resolved that the present Stockholders, Pio Crespi, H. K. Knowles and G. T. Naylor, do each subscribe to the Capital Stock of such new Corporation in the same number of shares, proportion

new corporation, the transfer by the president and the board of directors as trustees, of old Crespi & Company, of all its assets to new Crespi & Company, the assumption by new Crespi and Company, of all the debts and obligations of the old company and generally for the succession by the new company to the place, the rights and the obligations of the old company.

Pursuant to this resolution, taxpayer and the two nominal stockholders, constituting the trustees of old Crespi & Company, transferred to the new company, divesting themselves of, and vesting in the new company, as of the date of its chartering, all of the assets of the old company. Upon the taking effect of the transfer to the new company, the ten outstanding stock certificates in old Crespi & Company, were exchanged for 14 certificates issued in lieu thereof in the new Crespi & Company. These were issued in this way. The secretary of the company was instructed to and did issue the new certificates against the old certificates, the first certificate of the new against the first certificate of the old. A record was kept showing out of which old certificates the new certificates were issued, and this record was posted in the stockbook of the new corporation, so that each of the new certificates could be identified with the old certificate against which it was issued. Old stock certificates Nos. 20 and 21, the 150 shares last purchased from Helmbrecht, were broken down into new Certificates Nos. 8, 9, 10, 11, 12, 13. The stock represented by new Certificate No. 10 and 25 shares out of new Certificate No. 11, 75 shares in all, were sold by taxpayer to his son as a part of the Helmbrecht shares and for the same price he had paid for them.[3]

Upon these facts the taxpayer insists that what he has required to be done about the issuance of new shares for old, has preserved in the new shares the identity of the old so that notwithstanding the re-organization proceedings, his case falls within the rule which takes as a base the price paid for particular identified shares of stock, Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Miller v. Commissioner, 2 Cir., 80 F.2d 219; Fuller v. Commissioner, 1 Cir., 81 F.2d 176; rather than the first in, first out, rule, or that which takes the average value of all purchases; Commissioner v. Bolender, 7 Cir., 82 F.2d 591; Commissioner v. Oliver, 3 Cir., 78 F.2d 561; Commissioner v. Von Gunten, 6 Cir., 76 F.2d 670. We think it quite clear that it has not. When\upon expiration of its charter the assets of the old corporation passed to its officers and directors as trustees, the full property in them passed to them as a whole, Peurifoy v. Weibusch, 132 Tex. 36, 117 S.W.2d 773. When they were transferred to the new corporation the property was transferred, and had a value, as a whole, and when, to evidence the ownership of this value, shares in the new corporation were issued and distributed, each share represented an aliquot part of this value, and therefore each took the same basis as every other share.

Despite therefore, the elaborate measures the taxpayer took to invest the new shares

---

and ratio, as is now owned and held by each of them respectively, that is to say

Pio Crespi, 998 shares par value $1,000.00 each, total $ 998,000.00
H. K. Knowles, 1 share par value $1,000.00 .......... 1,000.00
G. T. Naylor, 1 share par value $1,000.00 .......... 1,000.00

1,000 Shares, par value ..$1,000,000.00

the actual reasonable value of which said stock by reason of accumulated surplus is in excess of the sum of Two Million Dollars, such subscription to be paid by the surrender and cancellation of all stock owned by such incorporators, in consideration of and in exchange for a like number of shares of the Capital Stock of said new Corporation to be issued and delivered to them, the Certificates representing said stock having been indorsed in blank by each of said Stockholders and delivered to themselves as such incorporators for said purpose and be * * * "

[3] In a letter to his son that he thought it to the best interest of the company that he become a stockholder, taxpayer stated: "I own 75 shares of stock in the company which I purchased from Helmbrecht at $1468.95 per share and which stock I would sell to you at its exact cost to me. When the company makes the annual statement next month, we will use Ernst & Ernst, auditing as a starting point to determine the same market value of the stock. Should that value exceed the above price such excess I will make an outright gift to you, if lower, I will make it up to you in the next sale of stock."

with the appearance of identity with the old, this was only appearance and it is not possible to affirm, as the taxpayer asks us to do, of a sale of shares in the new company, that the sale was not of an aliquot interest in that company as the owner of all the properties of its predecessor, but was a sale of shares representing and in law the same as, particular shares purchased in the old company.

The decision of the board was right. It is affirmed.