SCOTT v. COMMISSIONER OF INTER-
NAL REVENUE (two cases).

SUGDEN v. SAME.
Nos. 11787–11789.

Circuit Court of Appeals, Eighth Circuit.
Jan. 31, 1941.

Elmer B. Hodges, of Kansas City, Mo. (Albert F. Hillix and Gage, Hillix, Hodges & Cowherd, all of Kansas City, Mo., on the brief), for petitioners.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is a proceeding for review of· decisions of the Board of Tax Appeals determining a deficiency in the income tax liability of the Pontchartain Corporation for the year 1929 and adjudging petitioners as transferees of certain assets owned by the corporation liable for said deficiency to the extent of the value of the property of the corporation received by them. There were three proceedings initiated before the Board of Tax Appeals. They were there consolidated for purpose of hearing and have likewise been consolidated for purposes of these appeals. There was a written stipulation as to certain facts, the stipulation reserving the right to either of the parties to offer other

and further evidence not inconsistent with the facts stipulated. While other evidence was introduced, it is not preserved in the record before us so that the facts as found by the Board must be accepted as final.

From the findings it appears that on November 24, 1930, petitioners were the owners in equal shares of the entire capital stock of the Pontchartain Corporation, a Florida corporation, whose assets on that date included 2,813 shares of Class A stock of Poor and Company, a corporation, which stock was distributed on that date among petitioners, as stockholders, as a dividend, the book value of the stock being charged to surplus account. The value of this stock when transferred was $15 per share. There was a balance due from the corporation on its income tax for the year 1929. The Commissioner, through appropriate proceedings, attempted to collect the balance of this unpaid income tax from the corporation and exhausted all means available to him in an attempt to make such collection, but without success. Immediately after the transfer of this property to the petitioners on November 24, 1930, the total actual value of the assets of the corporation was $77,226.55, and its actual liabilities amounted to $91,-009.93. The Board concluded and found that the corporation was made insolvent by the transfer to the petitioners, and that since the corporation became insolvent after such transfer, the petitioners were liable as transferees to the extent of the value of the assets respectively transferred to them.

After the Board had entered its decision in each case determining petitioners' liability, petitioners filed motions to vacate the decisions and to reopen and present new and additional evidence. This motion was denied.

In this court it is urged that: (1) the Board in considering the question of the insolvency of the Pontchartain Corporation erred in failing to eliminate indebtedness of the corporation to the petitioners from the liabilities of the corporation; (2) the Board erred in failing to limit the petitioners' liabilities to their pro rata share of the amount to which the corporation was rendered insolvent by the transfer of assets to them; (3) the Board erred in holding petitioners liable as transferees because there was no proof of an intent on the part of petitioners to prefer themselves; (4) the Board erred in failing to reduce the liability of the petitioners by the amount it found the corporation to be indebted to them; (5) the Board erred in denying petitioners' motion to vacate the decision and to reopen for the purpose of permitting them to present new and additional facts.

The statute under which it is sought to collect taxes of the Pontchartain Corporation from petitioners as transferees is Section 311 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Code, § 311, which, among other things, provides that:

"The amounts of the following liabilities shall * * * be assessed, collected, and paid in the same manner * * * as in the case of a deficiency in a tax imposed by this chapter * * *:

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this chapter."

It is settled by controlling decisions that the Government may recover under this statute from distributees of assets of an insolvent corporation the value of what they received in order to discharge taxes assessed against the corporation. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350. If the Board was correct in determining the question of the corporation's insolvency, then manifestly there would be a liability on the part of the petitioners. In determining the question of insolvency the Board deducted from the value of the assets of the corporation the admitted value of the property transferred to the petitioners. At the time of the transfer the entire amount of the tax against the corporation had not been assessed, but there was an added tax later determined. We have held that a subsequently levied tax is nevertheless a potential liability of the corporation, of which the stockholders are charged with notice. United States v. Armstrong, 8 Cir., 26 F.2d 227; Updike v. United States, 8 Cir., 8 F.2d 913. In determining the question of insolvency, a liability for taxes, though unknown at the time, must be considered. Commissioner of Internal Revenue v. Keller, 7 Cir., 59 F.2d 499.

The stipulated facts showed that the corporation was indebted to each of the petitioners, and it is urged that that indebtedness of the corporation to them

should, in determining the question of the corporation's insolvency, have been eliminated on the theory that this transfer paid such indebtedness. It appears, however, that the transfer was not made in discharge of this indebtedness, but it was made to the petitioners as a dividend and was so regarded by the parties. But even if the transfer be considered as a liquidation of the indebtedness to petitioners, still the Government's claim for taxes was entitled to a preference over such claims. We need not, however, consider whether the corporation might properly have transferred this property in satisfaction of these debts because the record shows that the transfer was made as a dividend and the indebtedness still remained on the books of the company. The issue must be determined by the established facts. Davidson v. Commissioner, 8 Cir., 94 F.2d 300; Curtis v. Commissioner, 8 Cir., 89 F.2d 736.

■■■ Petitioners next urge that their liability should have been limited to the amount by which the transfer to them made the corporation insolvent. We think this contention untenable. Under the trust fund doctrine, if the assets of an insolvent corporation are distributed among its stockholders before its debts are paid, each stockholder is liable to creditors for the full extent of the amount received by him. Phillips v. Commissioner, supra; Phillips-Jones Corp. v. Parmley, 302 U.S. 233, 58 S.Ct. 197, 82 L.Ed. 221; Pierce v. United States, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697; McWilliams v. Excelsior Coal Co., 8 Cir., 298 F. 884; Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138. The distribution here was not parcelled out in installments but in its entirety and resulted in immediate insolvency. Perhaps, as argued by petitioners, some substantial amount of the distribution might have been made without rendering the corporation insolvent. A short answer to this contention is that the distribution was not so made.

■■■ It is urged that the decision of the Board should be reversed because there was no finding of an intent on the part of petitioners to prefer themselves to the tax claim. The Board in its opinion based upon the findings, in referring to its conclusion that the Pontchartain Corporation was insolvent at the time of the transfer, among other things, said: "If further support for this result were required in addition to the facts already

outlined, it would be furnished by the apparently deliberate failure to pay the second half of the income tax admittedly due at the time of distribution. Insolvency offers the explanation of that omission most charitable to petitioners. Absence of cash or readily convertible assets can not be the excuse since there is ample evidence that Poor and Company's stock was readily saleable in an amount greatly in excess of the tax delinquency. Petitioners chose to acquire that asset themselves, with the result that the corporation was disabled to raise the cash in that manner. And whatever other reason might have been in the minds of petitioners for their failure to have Pontchartain pay the tax would, it seems to us, be more reprehensible than the finding of insolvency on which the result here is based."

From the facts found, intent to prefer may well be inferred. Helvering v. Wheeling Mold & Foundry Co., 4 Cir., 71 F.2d 749; Coffee Pot Holding Corp. v. Commissioner, 5 Cir., 113 F.2d 415. We think it was sufficient in determining the liability of the transferee to establish either that the transfer made the corporation insolvent, or that it was made with the specific intent to defraud creditors. Irvine v. Helvering, 8 Cir., 99 F.2d 265.

■■■ As above recited, petitioners, after the Board had made final disposition of the three cases, filed motions to vacate the decision and to reopen the cases for presentation of new and additional facts. These motions were supported by affidavit asserting that petitioners had recently discovered that certain items shown by the stipulation of facts to have been carried on the books of the corporation as liabilities were not in truth and in fact liabilities of the corporation. Among these liabilities which were challenged in these motions were the following: $1,000, account payable to petitioner Elbert E. Scott; $3,588.83, account payable to petitioner Leora S. Sugden; $10,000, note payable to petitioner Elbert E. Scott; $1,127.15, account payable to J. J. McDonald; $1,000, assessment on stock of closed bank; $4,-000, mortgage payable.

The contention was that eliminating the aggregate of these items from the total liabilities of the corporation as found by the Board, the corporation would not have been insolvent. It is first observed that these items of liability are set out in the petition for redetermination of the al-

leged deficiency set forth by the commissioner in his notice of deficiency. Each petition is verified by the oath of the respective petitioners. The items of liability are again set out in the stipulation of facts signed by counsel for the respective parties. In the motion to vacate and to reopen the cases for the introduction of newly discovered evidence, it is alleged that, "The liabilities of the Pontchartain Corporation on November 24, 1930, as listed in its books of account were reflected by a stipulation entered into by counsel for the petitioner and the respondent at a conference in which neither this petitioner nor petitioners in related cases were present or participated. Certain adjustments to those liabilities as indicated by the books of the corporation were made in said stipulation based on facts familiar to counsel. No further evidence as to said liabilities was presented by either party at the hearing. The stipulation was filed and neither it nor its contents, insofar as they related to the liabilities of the Pontchartain Corporation on November 24, 1930, ever came to the attention of the petitioner herein or either of the petitioners in the two related cases until some time subsequent to the Board's decision in this case and then by reason of conferences relative to the preparation of the record for appeal."

 The proposed new facts not only conflicted with the stipulation of facts, but conflicted with the verified petition of each of the petitioners. Petitioners may not have known what was set forth in the stipulation of facts signed by their counsel, but they are not in position to claim that they did not know what was set forth in their petitions. The verification to each of the petitions recites that the petitioner has "read the foregoing petition, or has heard the same read to him, and is familiar with the statements contained therein, and that the facts stated are true, except those facts stated on information and belief, and those facts are believed to be true." These items of the corporation's liability were set forth, not on information and belief, but as known facts. Applications for rehearing on the ground of newly discovered evidence are not favored, and to warrant a reopening of the case it must appear that the evidence is in fact newly discovered and not merely that the importance of it is newly discovered. The application should ordinarily be denied if the court is not satisfied that the alleged newly discovered evidence really exists. Here, the petitioners not only do not produce evidence in support of their contention that these items of liability did not in fact exist, but they affirmatively alleged the existence of such liabilities. Substantial parts of the liability were owing to the petitioners themselves, and they should be presumed to have personal knowledge of these facts, at least when they signed the petitions on which the proceedings were based. Admissions in the pleadings upon which the trial was had are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended. Darling Shops, Inc., v. Brack, 8 Cir., 95 F.2d 135. The petitioners were required to present their whole case. A mere desire, after defeat, to try a case again is not sufficient basis for a rehearing. The Board in the exercise of sound discretion might, to be sure, grant a rehearing on proper showing, but in the exercise of that same discretion it may deny such application, and we think there was no abuse of discretion in denying petitioners' application here.

Other contentions of petitioners have been carefully considered, but we are of the view that they are wholly without merit.

The decisions appealed from are therefore affirmed.