**Carl A. BREDBERG and Diane Bredberg, Appellees,**

**v.**

**Dean LONG, Nelda Long, and Realife, Inc., d/b/a Realife Ranch, Appellants.**

No. 85–5012.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1985.

Filed Dec. 9, 1985.

Rehearing Denied Jan. 6, 1985.

Rodney J. Mason, St. Paul, Minn., for appellant.

Elton A. Kuderer, Fairmont, Minn., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

Plaintiffs Carl and Diane Bredberg prevailed in a suit brought in the United States District Court for the District of Minnesota[1] on claims against Nelda Long, Dean Long, and Realife, Inc. for fraudulent misrepresentation and violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206 and 207. The defendants raise numerous issues on appeal. We hold that venue was not proper for the FLSA claim and therefore reverse as to it. On the fraud claim, we reverse the award of punitive damages against Dean and Nelda Long. In all other respects, the judgment will be affirmed.

## I.

The Bredbergs' claims arose from the circumstances of their decision to join and their two year membership in Realife Ranch, a religious community located near Rogers, Arkansas. Realife Ranch was operated under the corporate aegis of Realife, Inc., an Oklahoma corporation registered to do business in Arkansas; both entities were formed by Nelda and Dean Long. (Where distinguishing between the two is unimportant, both Realife Ranch and Realife, Inc., will be referred to as "Realife.") Before they moved to Realife, the Bredbergs and their three children lived in another religious community with fifteen friends and relatives on the Bredbergs' farm at Dunnell, Minnesota. Before the Bredbergs and their children moved to Realife in late August 1979, they visited Realife twice, received a phone .call from Nelda Long, and were visited at Dunnell by Nelda and Dean Long. A few weeks after they arrived at Realife, the Bredbergs transferred all their assets to Realife. The livestock and much of the equipment at the Dunnell farm were sold at an auction and the proceeds were sent to Realife; the Longs returned to Minnesota to assist in organizing this sale. Farm property not sold at this auction was later transported to Realife. After the auction, the remaining members of the Dunnell community moved to Realife.

Shortly after they joined Realife, at the request of the defendants, Carl and Diane

1. The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota.

Bredberg signed statements that they were volunteers and expected no compensation for work performed in any of Realife's profit-making ventures. While at Realife, the Bredbergs worked in various businesses run by the defendants, including a restaurant and a convenience store. The Bredbergs received no wages for this work, but they were provided with nonmonetary benefits that included food and lodging, and each received three dollars a week as an "allowance."

On July 28, 1981, the Bredbergs left Realife and returned to Dunnell, Minnesota, where they now live. Realife and the Longs have returned to the Bredbergs money and property worth only a fraction of the value of the assets the Bredbergs transferred to Realife.

The Bredbergs' original complaint alleged fraud and breach of contract in connection with the transfer of their assets to Realife, and named the Longs and Realife as defendants. A little over a year after this complaint was filed, the Bredbergs amended it to include claims that Realife had willfully violated the FLSA in failing to pay them wages and overtime for work they performed in its business ventures.

In their fraud claim, the Bredbergs contended that the defendants had engaged in a variety of misrepresentations in order to convince the couple to move to Realife and to obtain their assets. They maintained that the defendants had falsely represented that they intended to set up a dairy comparable to that at Dunnell and place it under Carl Bredberg's management; in fact, only a small dairy was ever established. The Bredbergs also asserted that the Longs made extensive misrepresentations about the quality of life at Realife, including representations that decision-making at Realife was done on a group basis, that Realife, Inc., was run by a Board of Directors, and that Realife emphasized the promotion of family relationships. In truth, the Bredbergs asserted, Realife Ranch and Realife, Inc., were under the complete control of Nelda and Dean Long, and family relationships were continually undermined.

After a four-week trial, the jury returned special verdicts in the Bredbergs' favor, awarding them $160,708.05 on their misrepresentation claim and punitive damages of $100,000 against Dean Long, $750,000 against Nelda Long, and $750,000 against Realife. The jury further found that Realife had willfully violated the FLSA and assessed liability at $47,790.46. The District Court denied the defendants' directed-verdict, judgment-notwithstanding-the-verdict, and new-trial motions; it awarded the Bredbergs $47,790.46 in liquidated damages and $14,980.00 in attorney's fees on the FLSA claims.

With respect to the FLSA claims, the Longs and Realife contend here that venue was improper in Minnesota, that the trial court lacked personal jurisdiction over Realife, that the claim was barred by the statute of limitations, and that the evidence was insufficient in several respects. The defendants also challenge the sufficiency of the evidence on the fraud claim and the admission of certain evidence as irrelevant and prejudicial. The defendants further assert that the punitive-damages awards were excessive and unsupported by the evidence.

We agree with the defendants that venue was improper for the FLSA claims, and therefore find it unnecessary to reach the remaining FLSA issues. We hold that there was sufficient evidence to support the jury's fraud verdict and that the evidence that the defendants claim was irrelevant was properly admitted. Lastly, we conclude that the punitive-damages awards against Nelda and Dean Long were excessive, but affirm the punitive damages assessed against Realife.

## II.

There is no special venue provision for FLSA claims, so the general venue provisions of 28 U.S.C. § 1391 govern this case. The Bredbergs' original complaint, which stated only fraud and breach-of-contract claims, invoked diversity jurisdiction. Under 28 U.S.C. § 1391(a), in actions where jurisdiction is "founded only on diversity of

citizenship," venue exists in any district where all plaintiffs reside, where all defendants reside, or in which the claim arose. Because the plaintiffs reside in Minnesota, venue was proper there for the suit as it originally stood. However, addition of the FLSA claims against Realife imported a federal-question basis for subject-matter jurisdiction over the suit. Under 28 U.S.C. § 1391(b), in actions where jurisdiction is "not founded solely on diversity of citizenship," venue is proper only in a district where all defendants reside or in which the claim arose. The defendants maintain that inclusion of the FLSA claims ended the availability of plaintiffs' residence as a basis for venue for the suit, rendering venue improper in Minnesota.

■ The trial court found venue proper because the FLSA claims were asserted against parties to an existing action, making demonstration of an independent basis for venue over the FLSA claim unnecessary. We can find no prior case in which venue was found proper where a federal-question claim was joined with a state-law diversity claim and venue was based solely on § 1391(a)'s plaintiffs'-residence provisions. We conclude that the "pendent venue" approach adopted by the trial court is in this context irreconcilable with the requirements of § 1391(b). See 15 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3808 n. 3 (1976). Section 1391(a)'s extension of venue to the district in which all plaintiffs reside would be available in any suit based, in whole or in part, on diversity jurisdiction, if it were permissible to ignore the impact of a federal-question claim on venue on the ground that venue has already been established for the state claim under the § 1391(a) plaintiffs'-residence provisions. The more limited venue provisions of § 1391(b) would then apply solely to actions where only a non-diversity basis for jurisdiction could be invoked, whereas Congress has directed that they should apply to all actions "not based *solely* on diversity of citizenship."

The plaintiffs seek to avoid this inconsistency between a pendent-venue approach and § 1391(b) by distinguishing between cases where multiple claims are brought initially, where they admit that venue must be proper as to each claim, and cases where an additional claim is added to a pre-existing action, where they contend that venue for the original claim alone is sufficient. This does not save their approach. Plaintiffs in suits where diversity exists who raise both federal-question and state-law claims would still virtually always be able to avoid § 1391(b)'s strictures simply by first pleading only their state claims and later adding their federal claims under the liberal amendment provisions of the Federal Rules of Civil Procedure.

This is not to say that there are no circumstances in which establishing venue for one claim makes it unnecessary to demonstrate an independent basis for venue for other claims in an action. Where venue is proper for the original claims by a plaintiff against a defendant and additional claims are asserted as counterclaims or cross-claims, or come in through impleader, interpleader, or intervention, a venue objection may be unavailable as to the additional claims. See, *e.g., Brandt v. Olson,* 179 F.Supp. 363, 370–372 (N.D.Iowa 1959) (third-party claim). Where a federal court (in the absence of diversity of citizenship) exercises pendent jurisdiction over state-law claims joined with federal claims, an independent basis for venue over the state-law claims is unnecessary. *Travis v. Anthes Imperial Ltd.,* 473 F.2d 515, 528–529 (8th Cir.1973). But where, as here, the plaintiff asserts a claim against the defendant that provides a non-diversity basis for jurisdiction, § 1391(b) applies and venue is proper only in the district where the defendants reside or in which the claim arose.

The Bredbergs argue that venue is proper in Minnesota even under § 1391(b), contending that their FLSA claims arose in Minnesota, and that under § 1391(c) Realife, Inc., resides in Minnesota. We conclude that the FLSA claims arose only in Arkansas, and that Realife, Inc., does not reside in Minnesota.

The standard for determining where a claim arose under § 1391(b) is stated in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). *Leroy,* while it indicates that a claim may arise in more than one district for § 1391(b) purposes, cautions that venue is limited to "those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." 443 U.S. at 185, 99 S.Ct. at 2717 (emphasis in original). Here, Arkansas is a forum far superior to Minnesota so far as the accessibility of witnesses and evidence relevant to the FLSA claims and the convenience of the defendants are concerned. The Bredbergs' FLSA claims are based on work performed in Arkansas while they were Arkansas residents; the claims were brought against a corporation registered to do business in Arkansas (but not in Minnesota) for acts and omissions that took place in the course of the corporation's Arkansas operations. Minnesota has no comparable connections to the FLSA claims; the Minnesota connections cited by the Bredbergs (*e.g.,* the fact that they accepted the offer to move to Realife while in Minnesota) relate principally to their fraud claims and only indirectly to their FLSA claims.

Under 28 U.S.C. § 1391(c) a corporation is deemed to reside in any district in which it is "doing business." There is no general agreement as to whether it is sufficient under § 1391(c) to meet due-process jurisdictional standards for "doing business," or whether a higher level of activity within the district must be demonstrated. *Compare, e.g., Houston Fearless Corp. v. Teter,* 318 F.2d 822, 825 (10th Cir.1963) (due-process and § 1391(c) tests for doing business are identical) *with Rheem Mfg. Co. v. Johnson Heater Corp.,* 370 F.Supp. 806, 809 (D.Minn.1974) (§ 1391(c) requires more extensive contacts). The Realife contacts with Minnesota that the Bredbergs claim constitute doing business in Minnesota are ten overnight trips by a Realife member to retrieve grain from the Dunnell farm. We find these contacts too insubstantial to meet even the due-process test for doing business. Certainly they are insufficient to justify a conclusion that Realife was present in Minnesota in any general sense. This kind of contact would suffice as a basis for jurisdiction over claims actually arising out of what Realife did in Minnesota, but the Bredbergs' FLSA claim is not in this category. It arises out of what Realife and the plaintiffs did in Arkansas.

Thus, we hold that the FLSA claims should be dismissed for improper venue. We hasten to add that the Bredbergs are free to re-bring their claim in a forum, such as Arkansas, where venue would be appropriate. Defendants' counsel agreed at argument that this new action would not be barred, on res judicata grounds, by any judgment in this action on the plaintiffs' fraud claim. He also agreed that the time during which the FLSA claim was pending[2] in this action would not count against plaintiffs for purposes of computing the period of limitations if the FLSA claim is pressed in a new action.

### III.

The Longs and Realife contend that the Bredbergs failed to demonstrate two elements requisite to a fraud action: they claim that no evidence was presented that they engaged in any misrepresentation of past or present material facts, and that the Bredbergs could not have relied on the representations in question because the couple decided to join Realife before any of

---

**2.** Plaintiffs have argued, and defendants denied, that the FLSA claim, added by amendment, related back in time to the original date of filing the complaint. See Fed.R.Civ.P. 15(c). We leave this issue to be decided by the court in which the FLSA claim is refiled (if it is). We also express no view as to the time within which, under any applicable tolling or grace-period provision, the FLSA claim would have to be reinstituted, or as to any other statute of limitations issue raised here.

the representations were made. See *Davis v. Re-Trac Mfg. Corp.*, 276 Minn. 116, 149 N.W.2d 37, 38 (1967) (misrepresentation of past or present material fact and reliance are among eleven elements necessary to a fraud claim). Our examination of the record convinces us that there was extensive testimony and circumstantial evidence from which the jury could reasonably have concluded that the Longs misrepresented their intentions concerning the establishment of a dairy at Realife and misrepresented the quality of life at Realife. Further, there was testimony that misrepresentations occurred before the Bredbergs decided to move to Realife and, more significantly, before the Bredbergs decided to transfer their assets to Realife. The exacting requirements for disturbing a jury verdict are not met here. See *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 376 (1983), *modified per curiam*, 728 F.2d 976 (8th Cir. 1984).

■ The Longs and Realife maintain that the trial court improperly admitted irrelevant, prejudicial evidence of various aspects of daily life at Realife, including child-rearing practices, eating habits, members' health, and religious practices. The defendants also contest the trial court's acceptance of the rebuttal testimony of three witnesses. We conclude that the evidence of daily life at Realife was relevant to the Bredbergs' claims that the Longs misrepresented the quality of life at Realife, and hence that the trial court did not abuse its discretion in admitting the evidence. See *Matthews v. Worthen Bank & Trust Co.*, 741 F.2d 217, 219 (8th Cir.1984). There was also nothing improper in the rebuttal testimony the defendants cite, and its admission was not an abuse of discretion. See *United States v. Vivero*, 413 F.2d 971, 972 (2d Cir.1969), *cert. denied*, 396 U.S. 1017, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970).

## IV.

The defendants challenge the punitive-damages award on the grounds that there was no evidence of willful, malicious conduct, and that there was no evidence of the financial resources of Nelda Long, Dean Long, or Realife, Inc. See Minn.Stat. § 549.20, subd. 3; see also *Wilson v. City of Eagan*, 297 N.W.2d 146 (Minn.1980).

Examination of the record reveals ample evidence to support a finding of willful, malicious conduct. The record also contains evidence as to the financial status of Realife. Realife, Inc.'s, 1979 information tax return showed that it had assets of $740,000, and its 1980 return showed that it had assets of $1,030,000. The jury could reasonably have concluded from this that Realife was worth about a million dollars.

■ However, no evidence was presented as to the financial status of Dean and Nelda Long as individuals; the only assets which could be attributed to the Longs are those held by Realife, which the Bredbergs maintained was controlled by the Longs and operated for their financial benefit. Yet, since the Longs have no assets as individuals, Realife will have to pay the entire $160,000 fraud award, and this, in combination with the $750,000 punitive-damages award against Realife, will all but exhaust its assets. The limited assets which remain would hardly be sufficient to support the $850,000 in punitive damages assessed against the Longs. Furthermore, if Realife's assets belong to the Longs, the punitive-damages award against Realife will have its greatest impact on the Longs.

Punitive-damages awards must not exceed the level necessary properly to punish and deter. *Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn.1982). As we recently stated in *Hollins v. Powell*, 773 F.2d 191 (8th Cir.1985): "[W]e can see neither the justice nor sense in affirming a verdict which cannot possibly be satisfied. The purpose of punitive damages is to punish [the wrongdoer] for outrageous conduct, not to drain him of his life's blood." 773 F.2d at 198. Therefore, we conclude that the $750,000 punitive-damages award against Realife was justified, but that the additional punitive damages of $100,000 assessed against Dean Long and $750,000 assessed against Nelda Long must be set aside.

Accordingly, we reverse the decision of the District Court as to venue over the FLSA claims and as to the punitive-damages awards against Nelda Long and Dean Long. In all other respects the decision of the District Court is

Affirmed.