**MISSOURI HOUSING DEVELOPMENT COMMISSION, Appellee,**

v.

**Edward W. BRICE, Jr., Paul Goodrich, Joseph Timilty, Appellants.**

Nos. 89–1764, 89–1941.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1990.

Decided Nov. 26, 1990.

Thomas E. Wack, St. Louis, Mo., for appellants.

Richard P. Sher, St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

. Edward W. Brice, Jr., Paul Goodrich, and Joseph Timilty (collectively referred to as "defendants") appeal a judgment of the United States District Court[1] for the Eastern District of Missouri. *See Missouri Housing Development Corp. v. Brice,* No. 86–1574(C)(5) (E.D.Mo. Apr. 28, 1989). On appeal, defendants argue that the district court erred in (1) denying their motion to dismiss, (2) granting summary judgment in favor of plaintiff and denying their motion for summary judgment, and (3) denying Timilty's motion to amend the judgment. For the reasons stated below, we affirm all three orders.

## I. Facts

In 1981, Tower Village Nursing Care Center, Inc. ("Tower Village"), sought to renovate a hospital in St. Louis, Missouri, and operate it as a nursing home. After Tower Village ran into financial difficulties, its general contractor, SPCM, sued Tower Village and various state and federal government agencies which provided financing for the renovation. SPCM's lawsuit was settled after extensive negotiations, and a Memorandum of Agreement was executed on March 13, 1985 (Separate Appendix for Appellee at 27–32). Under the agreement, Lexington Management Co. ("Lexington") was to lease the nursing home from Tower Village, the Missouri Housing Development Commission ("plaintiff") was to make a loan to Tower Village, Tower Village was to execute a note to plaintiff, and Lexington's principals, Edward W. Brice, Jr., Paul Goodrich, and Joseph Timilty, all Massachusetts residents, were to guaranty the note. The SPCM lawsuit was filed in St. Louis, and

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

the agreement resolving the suit was negotiated there.

Pursuant to the agreement, Tower Village executed a note to plaintiff for $1.95 million in principal plus 11% interest on any unpaid balance. Defendants' guaranty covered all interest and $950,000 of the principal. The guaranty agreement also provided that all payments were to be made in Kansas City, Missouri, and contained a forum selection clause providing that if defendants were sued based on the guaranty agreement, the suit was to be in Missouri. Kansas City is in the Western District of Missouri, while St. Louis is in the Eastern District of Missouri.

Tower Village quickly defaulted on the note, and plaintiff filed this action to enforce the guaranty in federal district court in the Eastern District of Missouri. Defendants moved to dismiss on the ground that the Western District of Missouri was the only appropriate venue. The district court denied the motion, on the basis that the Eastern District had "the greater weight of contacts" with this case. *Missouri Housing Development Corp. v. Brice*, slip op. at 3–4 (Jan. 12, 1987) (order denying motion to dismiss for improper venue) (*Brice I*). Defendants then filed an answer, in which they admitted having executed the guaranty.

Plaintiff then moved for summary judgment. After defendants responded to plaintiff's motion, Lexington's lease was terminated as part of an agreement between Lexington and the U.S. Department of Housing and Urban Development. *Missouri Housing Development Corp. v. Brice*, slip op. at 2–3, 1988 WL 142978 (Feb. 22, 1988) (*Brice II*). Defendants then filed a cross-motion for summary judgment, which alleged that the guaranty agreement was no longer binding on defendants because the agreement stated that defendants' liability would cease if the lease was terminated by HUD. The district court granted plaintiff's motion for summary judgment and denied defendants'

cross-motion. The district court held, *inter alia*,[2] that (1) under the plain language of the lease, defendants were liable, and (2) HUD did not terminate the lease, but merely "consented to Lexington's termination of its tenancy in the premises." *Id.* at 3.

While the cross-motions for summary judgment were pending, Timilty denied signing the guaranty in his answers to plaintiff's request for admission and interrogatories and during his deposition. On the other hand, defendants' own memorandum in support of their motion for summary judgment continued to assert that they had signed the guaranty (Separate Appendix for Appellee at 85).

After the district court granted plaintiff's motion for summary judgment, defendants moved to amend the order of judgment to delete Timilty's name, on the ground that Timilty had not signed the guaranty agreement. The district court denied this motion based on defendants' admission in their answer that they had signed the guaranty. The district court later entered a separate order setting plaintiff's damages at slightly over $1.57 million.

On appeal, Brice and Goodrich argue that (1) venue in the Eastern District of Missouri was improper and (2) they are not liable under the guaranty agreement because HUD rather than defendants terminated Lexington's lease. Timilty appeals separately on the ground that he did not sign the guaranty agreement.

## II. The Brice/Goodrich Appeal

### A. Venue

Under 28 U.S.C. § 1391(a) (1988), venue in diversity cases lies "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Defendants reside in Massachusetts, while plaintiff is located in Jefferson City, Missouri, a city in the Western District of Missouri. Thus, plaintiff may establish

---

**2.** The district court also rejected defendants' defenses of impossibility and frustration of purpose.

venue in the Eastern District of Missouri only if the claim arose in that district.

The district court initially noted that both the Eastern and Western Districts were proper venues, because "there will be occasions when more than one district may serve as a proper venue," *Brice I*, slip op. at 3, *citing Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979) (*Leroy*) (suggesting that in an "unusual case ... it is not clear that the claim arose under only one specific district"). The district court admitted that *Leroy* "does not make clear whether a particular forum must have a preponderance of weighty contacts or merely a substantial connection in order to be" a proper venue, but held that even under the more stringent "weight of the contacts" test, plaintiff's claim arose in the Eastern District and not the Western District. *Brice I*, slip op. at 3. The district court reasoned that although performance of the agreement was to occur in the Western District, the guaranty "had its genesis as a condition to settlement of litigation that was pending in the United States District Court for the Eastern District of Missouri and negotiation of the guaranty took place primarily in St. Louis ... ultimately the claim arose from a lawsuit in the Eastern District of Missouri." *Id.*

On appeal, defendants argue that (1) in contract cases, all claims arose at the place of performance regardless of the weight of plaintiff's other contacts, and (2) in the present case, the weight of the contacts was clearly in the Western District.[3]

### 1. What Test Applies?

The first question the court must address is what test should be used in determining where plaintiff's claim arose. The Supreme Court has stated that:

> the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717 (emphasis in original). The Court failed to state, however, whether these factors were exclusive, or how the courts should decide whether it is in fact clear that a claim arose in one district. As a result, the courts have adopted a bewildering variety of tests to ascertain where claims arose under § 1391. *See, e.g., Broadcasting Co. of Carolinas v. Flair Broadcasting Corp.*, 892 F.2d 372, 375–76 (4th Cir.1989) (*Broadcasting*) (venue governed by "weight of the contacts"); *Miceli v. Stromer*, 675 F.Supp. 1559, 1564 (D.Colo.1987) (dispositive question is whether "substantial portion of acts giving rise to the plaintiff's claim" occurred in forum district); *Dody v. Brown*, 659 F.Supp. 541, 550 (W.D.Mo.1987) (*Dody*) (court should apply "weight of contacts" test and use *Leroy* factors as "tie-breaker"); *see generally Broadcasting*, 892 F.2d at 375–77 (listing various approaches taken by federal

---

**3.** Defendants also raise two other arguments; each is without merit. First, defendants argue that the place of performance is dispositive under Missouri law. It is well settled, however, that "the determination of where 'the claim arose' for purposes of federal venue under § 1391 is a federal question whose answer depends on federal law." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979) (*Leroy*). Defendants note that while venue is ordinarily a federal question, "state substantive law applies in defining the essential elements and nature of the claim of relief asserted under state law." *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d

254, 260 (8th Cir.) (*Cochrane*), cert. denied, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). The *Cochrane* court applied this rule only to hold that the plaintiffs had a valid substantive claim under Iowa law and went on to address venue under federal law. *Id.* at 260–62 (applying both "weight of contacts" rule and other tests).

Second, defendants claim that even under *Leroy*, there will usually be only one district where venue is proper. We have held, however, that "a claim may arise in more than one district for [venue] purposes." *Bredberg v. Long*, 778 F.2d 1285, 1289 (8th Cir.1985) (*Bredberg*), citing *Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717.

courts); *Dody*, 659 F.Supp. at 548–50 (same).

Plaintiff argues that we should apply the "weight of the contacts" test enunciated in *Broadcasting*. Defendants argue, by contrast, that none of the post-*Leroy* tests are applicable in breach of contract actions and that contract claims always arise at the place of performance. Thus, we must consider (1) whether *Leroy* and later cases are applicable to contract actions and (2) if so, which of the various tests should be adopted.

### a) Venue in Contract Cases

■ Defendants argue that under Eighth Circuit precedent, "the jurisdiction where performance of a contract is expected is a place in which contractual claims arise." *In re Nine Mile Ltd.*, 692 F.2d 56, 60 (8th Cir.1982) (per curiam) (*Nine Mile*); *see Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973) (*Gardner*). We believe that defendants have misconstrued both cases.

In *Nine Mile*, the plaintiffs filed suit in Iowa for breach of contract and the district court transferred the case to South Carolina because the contract was to be performed there. We affirmed, holding that "the jurisdiction where performance of *a* contract is expected is *a* place in which contractual claims arise," 692 F.2d at 60 (emphasis added). We added, however, that "[t]he place of performance rationale, coupled with the 'substantial part' test, is sufficient to sustain the district court's determination that South Carolina was a jurisdiction in which the petitioner's claims arose for purposes of the federal venue statutes." *Id.*[4] Thus, we apparently invoked the "substantial part" test (also known as the "substantial contacts" test) and stated that the place of performance was "a" place where the claim arose, rather than "the" place where the claim arose. *Id.* It logically follows that *Nine Mile* stands for the proposition that under the "substantial contacts" test, the place of

performance may be a proper forum, but other places may be proper fora as well.

In *Gardner*, a contractor sued a subcontractor for anticipatory repudiation of a supply contract. The repudiation occurred in Illinois, while performance was to occur in Arkansas. The contractor brought suit in Arkansas, and the subcontractor alleged that venue was improper because the repudiation occurred in Illinois. We disagreed, holding that "the claim arose ... in the district in which a substantial part of the omissions giving rise to the claim occurred.... [T]his presumably would be in the district where defendant omitted to perform his contract," 484 F.2d at 33. We went on to hold that the "claim arose" provision of § 1391(a) was intended

> to further the convenience of the parties, the primary purpose of the venue statutes, and to allow a suit to be brought at the place where the claim arose, which *could* include the place where the performance was to have taken place.... [The statute] is intended to expand the venue statute by placing venue, in addition to the residency of the parties, at the place where the claim of action arose, which *can* be construed in this case as the place where performance was to have taken place.

*Id.* (emphasis added). In sum, *Gardner* stands for two propositions: (1) venue is appropriate in any district in which "a substantial part of the omissions giving rise to the claim" occurred and (2) the district of performance can be one of those districts. This does not mean, however, that other places, such as the place of negotiation, cannot also have substantial contacts with the litigation.

We realize that other circuits have adopted defendants' interpretation of *Gardner* and *Nine Mile*. *See, e.g., Broadcasting*, 892 F.2d at 376–77 (citing *Nine Mile* as authority for "place of performance" rule but declining to follow rule); *Decker Coal Co. v. Commonwealth Edi-*

---

**4.** Under the "substantial part" test, venue is appropriate in any district in which "a substantial part of the events or omissions giving rise to the claim occurred." *Cochrane*, 596 F.2d at 261, quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3806, at 29 (1976 ed.).

son Co., 805 F.2d 834, 842 (9th Cir.1986) (citing *Gardner* in support of proposition that breach of contract occurs at place of performance). *But see Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1361 (5th Cir.1980) (citing *Gardner* and numerous other cases in support of proposition that "the factors deemed determinative [of where claim arose] might well indicate the suitability of several forums"), *rev'd on other grounds sub nom. Florida Dep't of Health & Rehabilitation Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1982) (per curiam); *Lamont v. Haig,* 590 F.2d 1124, 1134 & n. 64 (D.C.Cir.1978) (*Gardner* and other cases confer "venue in a district where a significant portion of the acts or omissions giving rise to the action occurred notwithstanding that venue might also lie in other districts"). However, none of these cases discussed *Nine Mile* or *Gardner* in great detail, and we therefore adhere to our interpretation of *Nine Mile* and *Gardner.*[5]

Accordingly, we hold that although the place of performance is certainly relevant to any discussion of venue, venue in contract cases should be evaluated under the same tests applicable to non-contract diversity cases.

### b) Venue Generally

■ As noted above, the *Gardner* and *Nine Mile* appear to have endorsed the "substantial contacts" test for determining where a claim arose. The "substantial contacts" rule, however, is no longer good law in the Eighth Circuit. In *Maybelline Co. v. Noxell Corp.,* 813 F.2d 901 (8th Cir.1987) (*Maybelline* ), *rev'g* 643 F.Supp. 294 (E.D. Ark.1986), a cosmetics manufacturer sued a competitor and its advertising agency, alleging that the defendants' nationwide advertising constituted unfair competition. The defendants moved to dismiss for improper venue, and the district court denied the motion.

We reversed, holding that "we are not persuaded that Arkansas can be grouped with those few districts that constitute the locus of the claim." *Maybelline,* 813 F.2d at 907. We stated:

[i]n several pre-*Leroy* cases interpreting the "where the claim arose" language of 28 U.S.C. § 1391(a) (1982), this court found that venue was proper where a "substantial part of the [events or] omissions giving rise to the claim occurred." *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27, 33 (8th Cir. 1973); *see Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 261 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Hawkins,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). The "substantial part" test was also applied in one post-*Leroy* section 1391(a) case, in which the court noted in a footnote citation that *Leroy* was supportive of a position analogous to the contrary of the court's position. *In re Nine Mile Ltd.,* 692 F.2d 56, 60 & n. 6 (8th Cir.1982) (per curiam). [Plaintiff] argues that the substantial part test is applicable here and has not been altered by *Leroy.* The district court found that venue was proper under either standard. We conclude that we must follow the Supreme Court's interpretation of section 1391(b) in *Leroy* in our review of this section 1391(b) issue, and thus *Leroy* represents the correct standard for determining whether [plaintiff's] claim arose in the Eastern District of Arkansas.

*Id.* at 906 n. 8. This footnote suggests that the "substantial contacts" test is inconsistent with *Leroy* and that the "weight of the contacts" test should be applied.

The case of *Bredberg v. Long,* 778 F.2d 1285 (8th Cir.1985) (*Bredberg* ), also supports this shift to the "weight of the contacts" test. In *Bredberg,* two former members of a religious community known as "Realife" sued Realife and its leaders in Minnesota federal court, alleging fraud, breach of contract, and violation of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206, 207 (1988). The defendants argued that the

---

5. We note in passing that we have found no post-*Nine Mile* cases in this circuit which address the impact of *Leroy* on venue in contract cases.

FLSA claims should have been dismissed for improper venue, because the plaintiffs worked for the defendants in Arkansas. On the other hand, the plaintiffs argued that venue was proper, because they accepted the defendants' offer to join the religious group while they lived in Minnesota. We initially observed that under *Leroy*, venue is limited to "those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff) may be assigned as the locus of the claim." *Bredberg*, 778 F.2d at 1289 (emphasis in original), *quoting Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717. Applying this test, we dismissed the plaintiffs' FLSA claims for improper venue because (1) under the three *Leroy* factors, "Arkansas is a forum far superior to Minnesota," (2) the plaintiffs' FLSA claims were brought "for acts and omissions that took place in the [defendant] corporation's Arkansas operations," and (3) Minnesota had no comparable connections to the FLSA claims, because "the Minnesota connections cited by the plaintiffs (*e.g.*, the fact that they accepted the offer to move to Realife while in Minnesota) relate principally to their fraud claims and only indirectly to their FLSA claims." *Bredberg*, 778 F.2d at 1289. Although the *Bredberg* court did not cite any specific test other than that of *Leroy*, its consideration of issues other than the *Leroy* factors suggests that it adopted a "weight of the contacts" test for determining where the plaintiffs' claim arose.

Accordingly, we hold that under *Bredberg* and *Leroy*, a claim arises for venue purposes at the location of the "weight of the contacts." [6] *See also* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure 2d, § 3806, at 61 (2d ed. 1986) ("Wright & Miller") (suggesting that *Leroy* adopts "weight of contacts" approach).

Thus, we must now decide whether plaintiff's claim has greater contacts with the Eastern District of Missouri or the Western District of Missouri.

### c) Weight of Contacts

■ Defendants argue that plaintiff's claim arose in the Western District because if the contract was to be performed in the Western District, the breach itself (Tower Village's default) occurred in that district. Plaintiff argues that its claim arose in the Eastern District because (1) the nursing home leased by Lexington is located in the Eastern District, (2) the negotiations for the guaranty agreement occurred in the Eastern District, and (3) the guaranty was part of a settlement of the SPCM case, which was pending in the Eastern District.

Although the question is an extremely close one, we agree with the district court's holding that the preponderance of contacts is in the Eastern District of Missouri and that plaintiff's claim arose in that district. Until defendants actually signed the guaranty agreement, all activity related to the agreement (including the SPCM lawsuit and related negotiations) occurred in the Eastern District. Furthermore, defendants executed the guaranty so that they could lease a nursing home located in the Eastern District. By contrast, the Western District's major link with this case is that defendants were required to mail their checks to Kansas City. *See Zumft v. Doney Slate Co.*, 698 F.Supp. 444, 445–46 (E.D.N.Y.1988) (in breach of contract suit for failure to pay royalties on Pennsylvania minerals, claim arose in Pennsylvania although royalty payments were to be mailed to New York); *cf. Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1289–90 (9th Cir.1977) (contract negotiations in California one of several factors supporting California venue); *Lieb v. American Pacific International*, 489

---

**6.** Because the *Maybelline* court considered only the three factors listed in *Leroy* (location of witnesses, location of evidence, and convenience of defendants), it could be argued that *Maybelline* implicitly repudiated *Bredberg*. *See Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 907 (8th Cir.1987) (*Maybelline*). We reject this view. In *Maybelline*, the defendants' allegedly false advertising was spread throughout the nation. Thus, the only special links any district had with the case were related to the three *Leroy* factors. By contrast, in this case, as in *Bredberg*, most relevant events occurred within two judicial districts.

F.Supp. 690, 696 (E.D.Pa.1980) (negotiation of contract in forum state one of several factors supporting denial of motion to dismiss for improper venue). Accordingly, we hold that the district court did not err in denying defendants' motion to dismiss for improper venue.[7]

### B. Summary Judgment

■ In their motion for summary judgment, defendants argued that the termination agreement constituted "a termination by HUD" within the meaning of the guaranty agreement, and therefore released defendants from all liability. The district court rejected this argument, holding that "the language of the October 9, 1987, agreement makes clear that HUD did not terminate whatever lease may have been in effect at the time, but rather consented to Lexington's termination of its tenancy in the premises." *Brice II,* slip op. at 3. The district court also relied on the affidavit of Kenneth Lange, the St. Louis manager of HUD, which stated that the agreement "was intended to foreclose any interpretation that HUD was terminating Lexington's lease." (Separate Appendix for Appellee at 97.) On appeal, defendants argue that the guaranty agreement's termination provision includes mutual as well as unilateral termination. Defendants also note that guaranty clauses should be construed in favor of the guarantors.

Under Fed.R.Civ.P. 56(c), summary judgment should be granted only if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." For the reasons stated below, we agree with the district court that the lease was terminated by Lexington and not by HUD, and with its holding that summary judgment for the plaintiff was appropriate.

The guaranty provides that:

The Guarantors' liability hereunder for both principal and interest on the Note shall terminate in the event that the Lease entered into by and between Lex-

ington Management Company, Inc. for the Northview Village Nursing Center [formerly known as the Tower Village Nursing Care Center] located at 2415 North Kingshighway Boulevard, St. Louis, Missouri ("project") is *terminated by Creditor [MHDC] or the Secretary of the United States Department of Housing and Urban Development or his successors* ("HUD") for any reason other than a material default under the Lease as determined by a court of competent jurisdiction.

*Brice II,* slip op. at 2 (emphasis added). Lexington's lease was terminated on October 9, 1987, by an agreement between HUD and Lexington. The termination agreement states that:

1. Lexington agrees to relinquish voluntarily its interests in the aforementioned Lease and the Addendum thereto as well as any rights to purchase owner's real estate....

2. In consideration of Lexington's promises, releases, and actions described in paragraph 1, hereof, HUD agrees to permit Lexington to terminate or have terminated its interest in the Lease and Addendum thereto and its tenancy of Northview Village Nursing Center without further liability on the part of Lexington to HUD for any acts which occurred prior to February 14, 1984 or on or after October 8, 1987....

3. In consideration of Lexington's promises, releases, and actions as described in paragraph 1 above including waiver of its rights under Section 441.060, R.S.Mo. 1986, [termination of tenancy at will, sufferance or month to month tenancy] HUD agrees to the termination on or before October 7, 1987, of any Lease entered into by and between Tower and Lexington for the Northview Village Nursing Center, including those dated April 13, 1984, and the First Amendment to Lease for the sole reason to permit HUD to take clear title, possession and

---

7. We therefore need not address plaintiff's argument that defendants waived all objections to venue by consenting to be sued in Missouri.

control of the property and not for any other reason.

*Id.* at 3.

As noted above, the termination agreement states that "HUD agrees to permit Lexington to terminate or have terminated its interest in the Lease," *Id.* This language is unambiguous and shows that the lease was terminated by Lexington and not by HUD. Furthermore, Kenneth Lange's affidavit clearly shows that the parties to the termination agreement intended it to mean that Lexington rather than HUD was terminating the lease. *See United States Suzuki Motor Corp. v. Johnson*, 673 S.W.2d 105, 107 (Mo.Ct.App.1984) (if there is a "latent ambiguity" in guaranty agreement, "parol evidence will be admissible to explain the true intent of the parties"). Accordingly, we hold that the district court did not err in granting summary judgment against defendants Brice and Goodrich and in favor of plaintiff.[8]

## III. The Timilty Appeal

As noted above, all defendants originally admitted in their answer and memorandum in support of summary judgment that they signed the guaranty agreement, but Timilty later repudiated this admission in his depositions and discovery responses. Timilty did not, however, bring the repudiation of his answer to the district court's attention before the cross-motions for summary judgment were decided. Instead, he waited until after the district court granted plaintiff's summary judgment motion and filed a separate motion to amend his answer and the judgment. The district court denied the motion, based on the rule that "[a]dmissions contained within an answer are binding and conclusive." *Brice III*, slip op. at 2. On appeal, Timilty argues that (1) the district court erred in granting summary judgment against him and (2) the district court abused its discretion in denying his motion to amend the judgment.

## A. Summary Judgment

Timilty argues that the district court erred in granting summary judgment against him, for two reasons. First, he argues that an admission in an answer is not binding where, as here, it has been rebutted by other evidence of record, and the district court should therefore have considered his deposition and discovery responses. Second, Timilty argues that even if his answer was originally binding, plaintiff effectively waived its right to rely on the answer by asking him about his authorship of the guaranty in interrogatories, a deposition, and a request for admissions. These questions will be addressed in turn.

### 1. Is Timilty's Answer Binding?

 As a rule, "[a]dmissions in the pleadings ... are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended." *Scott v. Commissioner*, 117 F.2d 36, 40 (8th Cir.1941) (*Scott*) (where taxpayers personally signed oath, they cannot obtain rehearing after discovering that their admissions were incorrect); *see also O'Neil v. Four States Builders & Remodelers, Inc.*, 484 F.Supp. 18, 19 (E.D.Pa.1979) (*O'Neil*); *Giles v. St. Paul Fire & Marine Insurance Co.*, 405 F.Supp. 719, 725 n. 2 (N.D.Ala.1975) (*Giles*). Thus, the question presented is whether admissions contained in pleadings are binding where, as here, the admitting party later produced evidence contrary to those admissions. We hold that Timilty's admissions in his answer are binding.

The case of *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir.1987) (*Davis*), *aff'g in relevant part* 635 F.Supp. 707 (W.D.La.1986), is on point. In *Davis*, the plaintiffs filed various claims, including a securities fraud claim, in September 1985, against a brokerage firm and one of its employees. The parties agreed that the securities claim was governed by a two-year statute of limitations and that the limitations period began to run when the plaintiffs discovered "the facts upon which

---

**8.** We therefore need not address plaintiff's contention that even if the termination agreement released defendants from post-termination lia-

bility, it did not release defendants from debt incurred prior to October 9, 1987.

their Securities Act claim was predicated." *Davis*, 823 F.2d at 107. Thus, the dispositive question was whether the plaintiffs were aware of the defendants' fraud before September 1983. In their complaint, the plaintiffs alleged that they ordered the defendants to close their securities accounts in August 1983, after they became aware of the defendants' "excessive and objectionable trading practices." The defendants then moved for summary judgment, on the ground that because the plaintiffs admitted that they were aware of the defendants' misconduct more than two years before filing suit, the securities claim was barred by the statute of limitations. In response to the motion, one of the plaintiffs filed an affidavit stating that he did not suspect any "wrongdoing until January 1984, when [he] allegedly discovered that [an individual defendant] had 'lied' to him regarding a transaction." *Id.* The district court nevertheless granted the defendants' motion for summary judgment, holding that plaintiffs were bound by their pleadings.

■ The Fifth Circuit affirmed. The court initially admitted that "[an individual plaintiff's] statement in the affidavit certainly conflicts with the [plaintiffs'] earlier statements in their complaints." *Id.* The court went on to hold, however, that "this factual dispute does not render summary judgment inappropriate. Irrespective of which document contains the more accurate accounts, the [plaintiffs] are bound by the admissions in their pleadings, and thus no factual issue can be evoked by comparing their pleadings with [the] affidavit." *Id.* at 108. Thus, *Davis* stands for the proposition that even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions.

We find the *Davis* court's reasoning to be highly persuasive,[9] and accordingly hold that Timilty's admissions were binding.[10]

### 2. Rule 15(b)

■ Fed.R.Civ.P. 15(b) provides that "[w]hen issues not raised in the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Timilty argues that because plaintiff raised "execution of the Guaranty as an issue throughout discovery and long after the answer to the Complaint was filed ... [that issue] was litigated 'by express or implied consent of the parties,'" Brief of Appellant Joseph Timilty at 15. Thus, the question presented is whether, under Rule 15(b), a party has "tried" the validity of an opposing party's admissions merely by asking about those admissions in a discovery proceeding.

Although we have found no case directly on point, we hold that such discovery inquiries do not amount to "implied consent"

---

**9.** We note in passing that Timilty has distinguished the cases cited by the district court and by plaintiff. We hold, however, that the distinctions between such cases and the present case do not apply to *Davis*. *See Mikulecky v. Marriott Corp.*, 854 F.2d 115 (5th Cir.1988) (defendant did not directly challenge admission of liability, but instead claimed that it was irrelevant because statute of limitations had expired); *Scott v. Comm'r*, 117 F.2d 36, 40 (8th Cir.1941) (petitioner/taxpayers personally signed admissions, instead of their attorney); *O'Neil v. Four States Builders & Remodelers*, 484 F.Supp. 18, 19 (E.D.Pa.1979) (no evidence presented to contradict pleadings); *Giles v. St. Paul Fire & Marine Ins. Co.*, 405 F.Supp. 719, 725 n. 2 (N.D.Ala. 1975) (same); *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F.Supp. 1246 (E.D.Mo.1976) (same), *aff'd on other grounds*, 561 F.2d 1275 (8th Cir. 1977); *Riley v. St. Louis Pub. Serv. Co.*, 245

S.W.2d 666 (Mo.Ct.App.1952) (defendant argued that admission not binding because answer also contained a general denial). *But see American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir.1988) (defendant's admission was not binding where it was contained in brief rather than pleading, and where plaintiff did not rely on it until after trial); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983) (plaintiff's admissions not binding where defendants failed to contest his assertion that they were not).

**10.** It follows that we need not address plaintiff's contention that even if Timilty's discovery responses would otherwise have precluded summary judgment, the district court correctly refused to consider the responses because defendants failed to mention them in their memoranda.

**1316**

to the amendment of Timilty's answer.[11] As a rule, the existence of implied consent "seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial." 6A Wright & Miller, § 1493, at 19 (2d ed. 1990). Because the parties did not address the validity of Timilty's admission in their summary judgment memoranda, they obviously did not believe that the issue had "entered the case." Thus, plaintiff did not consent either explicitly or implicitly to the amendment of Timilty's answer, and Rule 15(b) is inapplicable.

Accordingly, we hold that plaintiff did not waive its right to rely on Timilty's admissions.

### B. The Motion to Amend

■ Even an obviously binding admission, of course, may be amended under Fed.R.Civ.P. 15. After the district court granted plaintiff's motion for summary judgment, Timilty unsuccessfully moved to amend the judgment and his answer to reflect his contention that he did not sign the guaranty. On appeal, Timilty argues that the district court abused its discretion by denying the motion to amend. For the reasons stated below, we disagree.

Under Fed.R.Civ.P. 15(a), an amendment to an answer "clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if admitted, would have the effect of prejudicing another party to the action." 6

Wright & Miller § 1488, at 659–62 (2d ed. 1990).

In this case, Timilty is clearly guilty of delay, and plaintiff has clearly been prejudiced by such delay. Although Timilty stated in a deposition prior to summary judgment that he never signed the guaranty, the district court correctly noted that "this point was not raised prior to summary judgment nor was a request made to amend defendants' answer despite the fact that this deposition was taken over three months prior to the Court's ruling on the summary judgment motion." *Missouri Housing Development Corp. v. Brice*, slip op. at 2, 1988 WL 142980 (Mar. 22, 1988) (order denying motion to amend). Plaintiff would have been prejudiced by allowing the amendment, because it had previously been "placed on notice that the validity of all of the defendants' signatures to the guaranty was not at issue," *id.*, and Timilty's amendment would have required a new trial on Timilty's defense. *See Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 215–16 (S.D.N.Y.1978) (where respondent in admiralty case sought, six months after petitioner demanded arbitration of damages, to reverse position on arbitration, leave to amend denied); *see* 6 Wright & Miller, § 1487, at 623 (2d ed. 1990) ("if the amendment substantially changes the theory on which the case had been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial").[12]

---

**11.** Indeed, one circuit has held that Rule 15(b) may not be used to amend otherwise binding admissions even if contrary evidence was introduced at trial. *See Lucas v. Burnley*, 879 F.2d 1240, 1243 (4th Cir.1989) ("[w]e fail to see how Rule 15(b) applies to the question of whether a judicial admission is binding"), *cert. denied,* — U.S. —, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). *But see American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d at 227 (by failing to object to admission of conflicting evidence, plaintiff waived contention that defendant's admissions binding); *White v. ARCO/Polymers, Inc.*, 720 F.2d at 1396 (same); *Stacy v. Aetna Casualty & Sur. Co.*, 484 F.2d 289, 294 (5th Cir.1973) (failure to object to evidence contrary to answer was implied consent to amendment of answer).

**12.** We note that the cases cited by Timilty are easily distinguishable. *See Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309 (8th Cir.1983) (motion to amend answer allowed where defendant would not have to engage in additional discovery if motion granted); *Herrera v. Valentine*, 653 F.2d 1220 (8th Cir.1981) (motion to amend allowed where opposing party impliedly consented to amendment); *Hartley & Parker, Inc. v. Florida Beverage Corp.*, 348 F.2d 161 (5th Cir.1965) (where defendant responded to requests for admission but failed to verify answers, judgment for defendant affirmed despite technical error).

Accordingly, we affirm the district court's order granting summary judgment in favor of plaintiff.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

In my view, the district court erred in denying defendant Timilty's motion to amend the judgment and his answer to reflect his contention that he did not sign the guaranty.

Rule 15 of the Federal Rules of Civil Procedure states unequivocally that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The liberal allowance of amended pleadings "provide[s] maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1471, at 505–06 (2d ed. 1990). The Supreme Court has stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The district court denied Timilty leave to amend based on the "unjust hardship" an amended answer would work on the plaintiff, "who was placed on notice that the validity of all of the defendants' signatures to the guaranty was not at issue." On the contrary, Timilty denied signing the guaranty in his answers to plaintiff's request for admissions and interrogatories and during his deposition. He also presented deposition testimony of an expert witness who testified that Timilty's signature had been forged. The plaintiff therefore had notice that Timilty denied signing the guaranty before the district court granted summary judgment.

Although Timilty should have filed his motion to amend promptly after the interrogatories were answered and his deposition filed, his delay did not cause the plaintiff undue prejudice. The plaintiff was aware of Timilty's defense of forgery when it raised the issue of the guaranty's execution in discovery. In fact, the plaintiff had taken steps to refute the defense. The plaintiff does not allege that witnesses are no longer available, that witnesses' recollections would be dimmed by the delay, or that it would be otherwise harmed by the delay. Of course, the plaintiff would be required to go to trial on this issue of whether Timilty signed the guaranty, but this is not the type of prejudice recognized by law. Timilty is entitled to have this disputed issue resolved at trial. To deprive him of this opportunity is to deny him simple justice.

Accordingly, I concur in the opinion in all respects but one: I would reverse the denial of Timilty's motion to amend his answer and remand to the district court with directions to it to give Timilty the opportunity to amend his answer and to have the disputed issue tried.